HALEY & LANG COMPANY, Respondents, v. VECCHIO, Appellant.

(153 N. W. 898.)

(File No. 3753.   Opinion filed August 7, 1915.)

**Evidence—Mercantile Accounts Sales—Card Index Record, Order Sheets, Competency—Hearsay—Original Entry—Ledger, What Constitutes.**

In an action to recover an alleged balance on account for goods sold and delivered, held, that a card account record kept by plaintiff, a mercantile jobber, which record, kept by the book-keeper who testified to their character, was shown to be the only ledger account kept by plaintiff; to have been made up from certain loose-leaf slips or orders for goods, signed by or on behalf of defendant as purchaser of the goods therein specified, and from certain shipping freight and express receipts signed by the express or railroad company's agents, the shipments of goods having been made by plaintiff's shipping clerk on said order slips, was competent evidence of a book account of such sales; it being shown by plaintiff's credit man that he had charge of all accounts sales, that plaintiff sold defendant goods during a certain period, some of which were ordered from salesmen, some by phone, some by mail, others at plain-

tiff's business place; the checking, billing, and ledger system; that the items debited represented goods shipped to defendant upon orders; that he had compared the ledger accounts with the other records in question and with the order sheets, which, he testified, were in the handwriting of certain salesmen, one of whom corroborated as to his own acts; the shipping clerk's testimony covering his connection with the whole transaction and that all goods in the orders were shipped to defendant. **Held,** further, that said order sheets were competent evidence as part of said accounts; and that under the system of accounts in question there is not a departure from the rule of hearsay evidence; that the evidence shows plaintiff's ledger cards constitute the original, permanent, and only records of its accounts, which system is substantially the same as a loose-leaf ledger system of accounts.

Appeal from Circuit Court, Minnehaha County.  Hon JOSEPH W. JONES, Judge.

Action by the Haley & Lang Company against G. Del Vecchio, to recover for goods sold on account.  From a judgment for plaintiff entered on a referee's report, and from an order denying a new trial, defendant appeals.  Affirmed.

*Sam H. Wright,* for Appellant.

*Morris & Caldwell,* for Respondent.

Appellant cited: Nat. Ulster Co. Bk. v. Madden, (N. Y.) 21 N. E. 408; Lyman v. Bechtel, 55 Iowa, 437, 7 N. W. 673; State v. N. Y. & N. J. Tel. Co., 8 Atl. 290; Am. Fire Ins. Co. v. Nat. Bk., 30 S. W. 384; Arnold v. Penn., 32 S. W. 353, 32 N. Y. Supp. 455; Kaiser v. Alexander, 144 Mass. 71, 12 N. E. 209; Vosburg v. Thayer, 1 Johns. 461; Smith v. Bentz, (N. Y.) 30 N. E. 56.

Respondent cited: Jones on Evidence, Vol. 3, pp. 698, 729; State v. Stevenson, (Kan.) 2 Am. Eng. Anno. Cases, 841; Levine v. Insurance Co., 66 Minn. 138; Presley & Co. v. Illinois Central Ry. Co. (Minn.) 139 N. W. 609; Wisconsin Steel Co. v. Maryland Steel Co., 121 C. C. A. 507; United Grocery Co. v. J. M. Donnelly & Son, 77 S. E. 706; Robinson v. Mulder, 45 N. W. 505 (Mich.).

SMITH, J.  The only question presented on this appeal is the competency, as evidence, of certain card index records purporting to show an account of merchandise alleged to have been sold by plaintiff to defendant.  The plaintiff, located at the city of Sioux Falls, is engaged in a jobbing trade, making sales to

customers through traveling salesmen, phone and mail orders, and direct dealing with customers at its place of business. Defendant operated a store in Lake Preston, where he sold fruits, candies, and cigars. About the 1st of June, 1913, he removed to Sioux Falls, leaving his son-in-law in charge of the store, with authority to order goods from plaintiff. The son-in-law operated the store up to October 13, 1913. During that time defendant knew plaintiff was shipping fruit and other goods to the store and, during the first month, went to the wholesale house and himself ordered merchandise. These facts were admitted by defendant at the trial. The action was to recover a balance of $135.35 alleged to be due upon the account. Defendant interposed a general denial and a plea of payment in full. By stipulation of counsel, the cause was sent to a referee, who heard the testimony and found that plaintiff was entitled to recover $135.35. The court sustained the findings and ordered judgment which was duly entered. Appellant moved for a new trial, which was denied.

At the trial before the referee, plaintiff offered in evidence its account in the form of a card record, showing debit and credit entries, and a balance in the sum claimed by plaintiff. The only question necessary to be considered is whether the record of account kept under the system adopted by plaintiff, and authenticated by the testimony of certain witnesses, was competent evidence. One Winterstien testified that he was credit man of plaintiff and had charge of the accounts for sales of merchandise, and passed on all orders; that during the year 1913 plaintiff sold to defendant goods consisting of fruits, candies, and cigars. Over objections he was permitted to state that some of the goods were ordered from salesmen, some by phone, some by mail, and others at plaintiff's business place, by defendant himself; that the account was kept under his direction and supervision; that the system of doing business was, when an order was received, an order sheet was made out, the goods selected and shipped from the order sheet, and a freight or express receipt made out for the transportation company's signature; that the freight and express receipts, together with the order sheet, were then turned in to be checked by the bill clerk and billed, and, after being billed, were turned over to the bookkeeper and posted from the order sheets on to Exhibit A and B, the card account records; that

such records constituted permanent and the only records of accounts; that he did not himself ship any of the goods in question; that Exhibits A and B were made by the bookkeeper, though he did not see them made; that the items under the head of debits represent goods shipped by plaintiff to defendant upon separate orders; that the order sheets were turned over to the shipping clerk, who made the shipments from such sheets; that one Buell was plaintiff's salesman from about the 1st of March, 1913, to January, 1914, after which Mr. Welsh acted as salesman; that some of the orders were taken by these traveling salesmen, some were mail orders, and some phone orders; that he himself had checked and compared the ledger accounts (Exhibits A and B) with the other records in plaintiff's office, and with the order sheets for all items charged in the account; that Exhibits 1 to 67 were in Buell's and Welch's handwriting, except certain order sheets which were in Welsh's and witness' handwriting; that these exhibits consist of order sheets for goods billed to the defendant at Lake Preston, and that attached to each of the order sheets is the corresponding shipping receipt of the express or railroad company; that these exhibits were turned in to the billing clerk and checked against the freight or express receipts and billed. Exhibits 1 to 67 were received in evidence over defendant's objection. Buell testified that he was salesman for plaintiff company from the 1st of June to the 1st of August, 1913, and that once or twice a week defendant would come to plaintiff's place of business and order goods which were entered on an order sheet, taken to the office of the company and O. K.'d by the credit man, and turned over to the shipping department in the warehouse, so the goods could be forwarded by freight or express. One Caldwell testified that he was shipping clerk for plaintiff during the period covered by the account; that it was his duty to look after making and billing out orders, and to see that they were taken out by the transportation company, and a receipt obtained, which was turned in to the office to be rechecked, and that he handled these receipts himself; that the shipping receipts attached to Exhibits 1 to 67 were delivered when the orders were shipped; and that the goods represented on the orders and shipping bills were in fact shipped to the defendant.

Abbey Corness testified that she was employed by the plain-

tiff as bookkeeper, and had charge of the ledger cards and kept the accounts shown by Exhibits A and B; that they were termed ledger cards, and showed the account of defendant; that they were in her own handwriting and were kept by her; that the orders were usually taken by traveling salesmen or by telephone, or direct from the firm, placed on order sheets which were handed to her the next morning to post on the ledger cards; that Exhibits A and B were the only records with which she had anything to do, and constituted the only ledger account kept; that plaintiff's Exhibits A and B showed the true state of the account between plaintiff and defendant.

Appellant conedes that this evidence, if admissible, would sustain the findings of the referee and the judgment of the trial court; his contention being that they were based on incompetent evidence received over proper objections. He contends that the record taken as a whole fails to disclose:     (a) That the plaintiff kept a book of original entries; (b) that it affirmatively discloses that no such book was kept; (c) that there is no substantive evidence showing the sale and delivery of the goods; (d) that the evidence upon which the findings were based was hearsay. Appellant's argument is that, under the card system of keeping accounts disclosed by the record, there is a departure from the rule of hearsay evidence, which finds no support from any court in this country or elsewhere, and will enable the merchant, if so inclined, to manufacture evidence in his own behalf without any restraints against false swearing and perjury.

Jones on Evidence (Civ. Cases, 2d Ed.), in a discussion of books of account as evidence, says:

Section 596: "There is general concurrence in the rule that the books offered should be books of original entry.    *    *    * In this particular every case must be made to depend very much upon its own peculiar circumstances, having regard to the situation of the parties, the kind of business, the mode of conducting it, and the time and manner of making entries. Upon questions of this sort much must be left to the discretion of the judge who presides at the trial because having the books before him, and understanding all the circumstances of the case, he is best able to decide upon all questions involving the fairness and regularity of the entries sought to be proved."

Id. § 670: 'No particular form of books of accounts is generally prescribed, although books are far more satisfactory when kept in the form of daily entries of debits and credits in a daybook or journal.  They may be kept in the form of a ledger, if this is the general mode in which the party keeps his books, provided the entries are original entries.  *  *  *  But the book should be such a regular and usual account book as explains itself and as appears on its face to create a liability in an account with the party against whom it is offered, and not to be a mere memorandum for some other purpose.  Hence mere loose sheets of paper are not admissible, and a single entry does not constitute an account book.  Charges may be so isolated and separated from others as to indicate that they were not made in the regular course of business, in which case they should be rejected.  When books are proved to be the 'only books' of the party, they are books of original entry."

Id. § 572: "It is another requisite that the entry should be made at or about the time of the transactions.  *  *  *  It is evident that much must depend upon the nature of the transaction and the regular mode of carrying on business."

Id. § 573: "In most jurisdictions it is necessary that testimony should be given authenticating the book of account and showing it to be the book of original entries kept for that purpose; also that the entries were true and correct, and contemporaneous with the transaction.  *  *  *  The person making the entries should have personal knowledge of the facts recorded or his testimony should be supported by that of some person who has such knowledge."

In State v. Stephenson, 69 Kan. 405, 76 Pac. 905, 105 Am. St. Rep. 171, 2 Ann. Cas. 841, the court said:

"The evidence discloses that modern wholesale houses have adopted modern methods of bookkeeping, in which the daybook and journal once in common use have no place in the system. The order from a customer comes in, and when approved by a credit man is passed to shipping and bill clerks, who select and assemble the goods ordered from different departments of the house and check them out, and then the order, initialed or marked by those through whose hands it has passed, is handed to the bookkeeper, who formally enters the items in a book designated.

a 'ledger.' This book is the first complete and permanent record of the charges and credits in the dealings had between the house and the customer.  *  *  *  All that precedes the entries in the so-called 'ledger' are mere temporary memoranda which are turned in to the bookkeeper, who makes the first and only formal entries of the transactions between the parties. They are made about the times of the transactions and in the regular course of business. This book is the only permanent record of the dealings of the parties from which the status of a customer's account can be ascertained."

In that case the accused was charged with making false representations as to the amount of his indebtedness, for the purpose of obtaining credit. The account books of several wholesale houses from which he had obtained credits were received in evidence, first having been authenticated by the oaths of the bookkeepers who made the entries. Such books of account were held competent evidence against the accused, even in a criminal case. Appellant contends that Exhibits 1 to 67 were improperly received in evidence.

In Wis. Steel Co. v. Md. Steel Co., 203 Fed. 403, 121 C. C. A. 507, books of original entries (based on time cards turned in by workmen), in permanent form, were received in evidence, together with the time cards themselves. The court says:

"Workmen's time cards and other parts of the system (apart from the books) were properly admitted, in our judgment, if for no other reason, because they tended to furnish the 'circumstantial guaranty' of the correctness of the book entries. But we are of the opinion that the books, time cards, and other parts of the system were admissible under the Wisconsin statutes, as well as under the general law of evidence." Feuchtwanger v. Manotowoc Malting Co., 187 Fed. 713, 109 C. C. A. 461; Wigmore, § 1730.

The evidence in the case at bar shows that the ledger cards used by plaintiff in its system of bookkeeping constitute the original, permanent, and only records of accounts with its customers. This card system is substantially the same as a loose-leaf ledger system of accounts. In Presley. Co. v. I. C. R. R. Co., 120 Minn. 295, 139 N. W. 609, the court says:

"Error is also assigned because the court received in evidence a sheet from plaintiff's loose-leaf ledger, on the ground that it is

not shown to be an account book within the terms of R. L. 1905, § 4719. * * * . The ledger entry was, however, properly received. It was, in fact, an original entry. Mr. Graupman, plaintiff's manager, testified in substance that this ledger is a record kept in plaintiff's office; that the entries in it are made, at the time of the transactions, from temporary sales slips which are not preserved; that this entry was made by a clerk in the office; that he did not know whose handwriting it was; that he saw it at the time it was made up; and that it was a true and correct statement of the account of the sale of this car. * * * The foundation was sufficient."

Many of the numerous decisions upon this subject are under statutory provisions. We have no such statute in this state, and must rest our decision upon reasons which underlie the recognized rules and principles of evidence, as applied to modern business methods and conditions. The original rule has long since outgrown one of the limitations placed upon it by the earlier decisions and law writers, which was that it (Vosburgh v. Thayer, 12 Johns [N. Y.] 461) "was intended for cases of small traders who kept no clerks."

The evidence offered and reeived was properly and sufficiently authenticated and was competent. The order and judgment of the trial court are affirmed.