HANSON, Respondent, v. FIESLER, et al., Appellants
(207 N. W. 449.)

(File No. 5442.   Opinion filed February 16, 1926.)

1. **Witnesses—Specific Performance—Vendor and Purchaser—Plaintiff's Testimony of Improvements Made by Him and Checks Given Deceased Not Incompetent, in Action to Compel Performance of Contract to Convey; "Personal Transaction;" "Any Transaction Whatever."**

   In action against administratrix and heirs of deceased owner to compel performance of oral agreement to sell or deed land, plaintiff's testimony as to improvements he had made on land and checks he had issued to deceased, in performance of agreement, held not testimony of any transaction with deceased, so as to be barred under Rev. Code 1919, Sec. 2717, subd. 2; "any transaction whatever" being equivalent to "personal transaction," a term describing the whole of the negotiation or treaty between original parties out of which cause of action arises.

2. **Evidence—That Wife of Deceased Owner of Land Secured Witness to Write Plaintiff to Come Home and Take Care of Them Admissible.**

   In action against administratrix and heirs of deceased owner of land to enforce parol contract to will or deed land in exchange for taking care of owner and wife, testimony that, shortly before plaintiff returned home, deceased owner's wife had requested witness to write, asking him to do so, held admissible as showing wife's attitude toward contract.

3. **Trial—Evidence—Negative Testimony Held Properly Excluded as Not Rebuttal.**

Where plaintiff introduced witnesses testifying that deceased had told them he had agreed to will or deed land to plaintiff, exclusion of rebuttal testimony of defendant's witnesses, which did not deny that such statements had been made, but was merely to effect that defendant had never made such statements to them, held proper.

4. **Appeal and Error—Evidence—Exclusion of negative testimony Held Not Prejudicial if Erroneous.**

In action against administratrix and heirs of deceased owner of land to enforce parol agreement to will or deed, where plaintiff introduced witness testifying that deceased had told them he had agreed to will or deed land to plaintiff, exclusion of negative testimony of other witnesses that deceased had never made such statements to them held not prejudical if erroneous.

5. **Specific Performance—Homestead—Parol Agreement, Substantially Performed, to Will or Deed Land Specifically Enforceable, Though Property Was Homestead When Agreement Was Made; "Conveyance."**

In view of Civ. Code, Sec. 1311, and Rev. Code 1919, Secs. 604, 607, and 610, parol contract to support aged man and wife, in exchange for agreement to deed or will property, substantially performed, held specifically enforceable, even though property was homestead, at time of agreement, there having been no "conveyance" of the homestead within meaning of Pen. Code, Sec. 3217.

Appeal for Circuit Court, Charles Mix County; Hon. R. B. Tripp, Judge.

Action by Chris E. Hanson against Inger Fiesler, as administratrix of the estate of Benedict Thompson, deceased, and others. From the judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

*Walker & Gurley,* of Armour, and *G. M. Caster,* of Lake Andes, for Appellants.

*French, Orvis & French,* of Yankton, and *John W. Add're.* of Armour, for Respondent

(1) To point one of the opinion, Appellant cited: Smith v. Burnet, 35 N. J. Eq. 314; Woolverton v. Van Sycel, 57 N. J. '.. 393; Provost v. Robinson, 58 N. J. L. 222; Dickerson v. Payne. 66 N. J. L. 35; Sitton v. Shipp, 65 Mo. 297; Rin; v. Ja·;on 66

Mo. 424; Chapman v. Doughtery, 87 Mo. 617; Meier v. Thieman, 90 Mo. 433.

Respondent cited: Merhoff v. Merhoff (Minn.), 87 N. W. 781; Chadwick v. Cornish (Minn.), 1 N. W. 55; Hall v. Northwestern Endowment Association (Minn.), 49 N. W. 524; Fitch v. Martin (Neb.), 104 N. W. 1073; Walkley v. Clarke, 107 Io. 451, 78 N. W. 70; Bunker v. Taylor, 10 S. D. 526.

(3) To point three, Appellant cited: Jones v. Subera, 25 S. D. 223.

(5) To point five, Appellant cited: Teske v. Dittberner, 98 N. W. 57; Larson v. Butts, 35 Neb. 190; Clar v. Koenig, 54 N. W. 842; Alvis v. Alvis (Io.), 99 N. W. 166; Weatherington v. Smith (Neb.), 109 N. W. 381, 124 A. S. R. 855; O'Neil v. Bennet (S. D.), 181 N. W. 97; Kaiser v. Klein, 29 S. D. 464, 137 N. W. 52; Karlesson v. Odland (S. D.), 192 N. W. 758; Stenson v. Elfman, 29 S. D. 59; Buettenbach v. Gerbig, 90 N. W. 654.

SHERWOOD, J. This is an action brought on an alleged verbal contract to will or deed to plaintiff a farm in Charles Mix county, in consideration of his providing a living for Benedict Thompson, the owner of the farm, and Ingeborg Thompson, his wife, during their lifetime.

The action is brought against he administratrix of Thompson's estate and Inger Fiesler and Julia Lehm, as his only heirs. The complaint sets forth the alleged verbal contract, in substance, as follows:

"Palintiff agreed to live upon the said land and to farm and cultivate the same as long as the said Benedict Thompson and his wife, Ingeborg Thompson, or either of them, should live. * * *. It was agreed that the plaintiff might place buildings and other improvements upon said land, and handle and operate the said farm as if it were his own, and * * * should provide a living for the said Benedict Thompson and his wife during the remainder of their lives, and, in consideration of said agreement, * * * said Benedict Thompson agreed to convey said farm to the said plaintiff by deed or by will."

The complaint also alleged plaintiff placed improvements of the value of about $5,000 on the land, and fully performed the contract on his part, the death of both Benedict Thompson and his wife, and Thompson's failure to either deed or will the land

to plaintiff, and asked that he be declared the owner in fee of said land and defendants be required to convey the same to him.

The answer denies the contract, and alleges, if such contract was made, it was void, because the land was a homestead at the time it was made and until Thompson died, and the contract was not in writing, and Ingeborg Thompson was not a party thereto.

Findings and judgment were for plaintiff, respondent here. From this judgment and an order denying a new trial, defendants appeal. There are thirty-eight assignments of error.

The material assignments may all be considered in four groups:

(1) Error in permitting plaintiff to testify concerning improvements made by him upon the land, the value of such improvements, and the issuing of certain checks to pay expenses of Benedict Thompson.

(2) Error in permitting D. C. Murphy and Mrs. Chris Hanson to testify to statements made by Mrs. Benedict Thompson in the spring of 1908, relative to plaintiff's coming back from his homestead in Stanley county and taking care of them.

(3) Error in excluding certain negative testimony offered by appellant.

(4) Error in holding the contract pleaded could be enforced against the homestead; the contract not being in writing ,and decedent's wife not joining directly in making the contract.

[1] To understand the questions presented by group (1), it should be observed that plaintiff was a witness in his own behalf, and was permitted over proper objection to testify: That since 1908, he made improvements upon the land described in the complaint consisting in part of a house and barn, all of the value of about $5,000; that he paid for these improvements, earning some of the money by working other land; also detailing briefly where Benedict Thompson lived during his lifetime.

The other testimony objected to under this group of assignments can be better understood by giving briefly three groups of the questions asked of and answered by plaintiff as follows:

"Q. Your attention is called to Exhibit 2, Mr. Hanson. Whose signature is to the bottom of that exhibit? A. That is mine.

"Q. Who was James Ver Bryck? A. That was the man that ran the Johnson House.

"Q. What did you do with this check when you wrote it? A. I gave it to Mr. Ver Bryck.

"Q. How did you get it back? Where did you get it from when it came back into your hands? A. Through the bank.

"Q. Was this paid—the cancellation stamp on it at that time? A. Yes sir.

    *        *        *        *        *        *

"Q. What was that given to the payee for? A. For board.

"Q. Here is another check, Exhibit 15. Did you sign that? A. Yes sir.

"Q. Do you know who Elsie Dunkley is? A. Yes, sir.

"Q. Who was Elsie Dunkley? A. The nurse.

"Q. Was she the nurse for any particular physician in this town? A. Mrs. Bigler.

"Q. Dr. Bigler? A. Yes.

"Q. Do you know, of your own knowledge, whether this nurse, Elsie Dunkley, ever took care of Mr. Thompson when he was sick? A. Yes.

"Q. She did? A. Yes, sir.

"Q. What was this check given for? A. For taking care of Mr. Thompson.

"Q. Where did you get this check after parting with it in the first place? A. From the bank.

"Q. Was the pay stamp on it at that ime? A. Yes, sir.

"Q. Now here is Exhibit 4. Whose signature is to the bottom of that check? A. That is mine.

"Q. Now the payee named in this check is B. Thompson. Somebody has written the name B. Thompson on the back of that check. Do you know whose handwriting that is? A. Mr. Thompson's.

"Q. Benedict Thompson? A. Yes.

"Q. How did this check get back into your hands after you let go of it at first? A. Through the bank.

"Q. It had the pay stamp on it when you got it back? A. Yes, sir."

It is the contention of appellant that, this being an action against the administratrix and heirs of a deceased person, in

which plaintiff asks, and might recover, judgment against them, he is barred from giving the testimony heretofore indicated by the provisions of subdivision 2 of section 2717, R. S. 1919. This subsection, in so far as it is applicable to the facts of this case, provides:

"In civil actions or proceedings by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or order entered for or against them, neither party * * * shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party."

It is clear that the parties here and the kind of action are such as would come under the bar of this statute.

The remaining question presented under exception 1 is: Was the testimony received "to any transaction whatever" in this case, as the word "transaction" is defined and limited by law?

"Transaction" is defined as:

"Something which has taken place whereby a cause of action has arisen; whatever may be done by one person which affects another's rights; and out of which a cause of action may arise." 38 Cyc. p. 937.

"Personal Transaction" is defined as:

"The doing or performing of some business between parties * * * a term which describes the whole of the negotiation or treaty between the original parties to it, out of which the cause of action arose." 30 Cyc. 1532.

And it is said:

"A transaction within the meaning of the statutes under discussion is an action participated in by witness and decedent, or something done in decedent's presence, to which, if alive, he could testify of his personal knowledge." 40 Cyc. 2314.

Under these definitions the phrase "personal transaction" is the practical equivalent of the phrase "any transaction whatever" used in our statute, and it will be so considered in this opinion. 30 A. & E. Ency. of Law (2d ed.) pp. 1031 and 1032, 28 R. C. L. Sec. 86.

It is obvious that the transaction in the instant case, out of which the cause of action arose, and on which it must stand or fall, was the verbal contract between plaintiff and decedent and alleged in the complaint.

"Since the statutory provision generally relates to transactions and communications between the witness and decedent, there is a necessary implication that the rule of exclusion applies only to matters within the personal knowledge of both parties. The mere statement of a fact known to the witness, but not relating to anything said or done by the decedent, does not involve a transaction between the witness and the decedent, nor does an independent act of the witness not purported to have been done pursuant to any contract or arrangement with, or at the instance of, the decedent, constitute a personal transaction with the decedent." 30 A. & E. Encyc. of Law (2d ed.), pp. 1026 and 1031; 28 R. C. L., § 84.

Jones on Evidence (3d ed.), § 786, states the rule thus:

"The adverse party may testify to any fact which is not either a transaction, a communication, or a statement, of the deceased, * * * even if it is material to the case, unless the statute expressly makes him incompetent as to facts equally within the knowledge of the deceased. * * * The rule of the statute does not operate to close the mouth of the witness as to any matter of fact coming to his knowledge in any other way than through personal dealings with the deceased person, or communication made by the deceased to the witness in person."

Our own Supreme Court, in construing this statute, said:

"We are not inclined to extend the exceptions beyond the express language of the statute. The policy of the Legislature seems to have been to render all persons competent to testify, except in the cases specified, and, to render a witness incompetent, he must come clearly within the exceptions." Bunker v. Taylor, 74 N. W. 450, 10 S. D. 526.

And in Witte v. Koeppen, 79 N. W. 831, 11 S. D. 598, 74 Am. St. Rep. 826, we said:

"Such proviso should be construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms; and those who set up such exception must establish it as being within the words, as well as within the reason thereof."

This general doctrine has been sustained by this court in the following cases: Alexander v. Ransom, 92 N. W. 418, 16 S. D. 302; Chapman v. Greene, 130 N. W. 30, 27 S. D. 178; In re Golder's Estate, 158 N. W. 734, 37 S. D. 397; In re Barrett's

Estate (S. D.), 204 N. W. 167; Knittle v. Ernst, 168 N. W. 754, 40 S. D. 594; State v. Nieuwenhuis, 178 N. W. 976, 43 S. D. 198.

We have also admitted evidence of independent acts and facts not amounting to transactions with decedent, such as: Testimony from the protestant of a will as to the physical appearance and acts of the testator as tending to show mental capacity. In re Golder's Estate, supra. Testimony of the assignor of a mortgage in an action to foreclose on a decedent that no action or proceeding has been instituted at law to recover the debt. Alexander v. Ransom, supra. Testimony that plaintiff was the owner of a certain cow, so long as the witness did not testify the animal was given to her by her deceased mother. Knittle v. Ernst, supra.

Upon a practically identical statute, the Supreme Court of North Dakota has reached substantially the same conclusions. First Nat. Bank of Bottineau v. Hilliboe, 114 N. W. 1085, 17 N. D. 76, 17 Ann. Cas. 213; St. John v. Lofland, 64 N. W. 930, 5 N. D. 140.

A careful examination of all the testimony received over this objection makes it clear that none of it purported to refer to the contract in suit or to any transaction with Benedict Thompson. It purported to relate to independent acts and facts, and it could only be by inference, if at all, that any part of this testimony could in any manner be connected with the contract between plaintiff and Thompson.

We hold with the Supreme Court of Iowa in McElhenney v. Hendricks, 82 Iowa 657, 48 N. W. 1056, that this statute "does not exclude the proof of facts from which by inference other facts may be found." 30 A. & E. Ency. of Law, p. 1032, and note 3.

We further hold the testimony not purporting to refer to any contract or transaction with decedent, but to acts and facts, knowledge of which was gained independently of any transaction with deceased, was all competent to be received in this case. 40 Cyc. 2314 and 2315; Hutton v. Doxee, 89 N. W. 79, 116 Iowa 13, and cases cited therein; 28 R. C. L. § 84.

Neither Davis v. Davis, 124 N. W. 715, 24 S. D. 474, nor Starkweather v. Bell, 80 N. W. 183, 12 S. D. 146, cited by appellant, are at all in point under the facts in this case. Nor is the later case of In re Barrett's Estate decided by this court and re-

ported in 204 N. W. 167, in point under the facts in the instant case.

[2]   Under assignment No. 2, D. C. Murphy and Mrs. Chris Hanson were permitted to testify to a conversation with Mrs. Benedict Thompson, at which Benedict was not present, in which Mrs. Thompson said, in substance, that Benedict was sick in bed, and he wanted her to come over and get them to write to plaintiff to come home and take care of them. She was afraid they were going to be found dead there, and, if plaintiff would come back and take care of them, they would give him the place; that the letter was written, and about four months afterwards plaintiff came back. At the time the letter was written Mrs. Hanson was Mary Murphy, and had never gone with Hanson. To this testimony it was objected that it was incompetent, irrelevant, and immaterial, hearsay, and not binding on Benedict Thompson or defendants as his successors in law.

No rule or authority sustaining appellant's objection to this testimony has been called to our attention in his argument, and none occurs to us. We think the testimony was competent and material as tending to show Mrs. Thompson's attitude toward, and ratification of, this contract, and, in view of the undisputed evidence that plaintiff did return soon after the letter was written, in fact as soon as he had proved up on his homestead, and entered into a contract with Benedict Thompson substantially identical with the contract written about, we think the trial court was justified in finding that Mrs. Thompson went to Murphys and requested them to write the letter to plaintiff at Benedict Thompson's request.

[3, 4]   Under No. 3, appellant offered to prove by one Slettebak, a Norwegian friend of decedent, who had on one or two occasions paid taxes for him, and by five or six other business acquaintances, relatives, and friends, that at no time during the life of Thompson did he ever state or intimate to either of them he had agreed to will or deed the farm to plaintiff in return for support and care. This testimony was objected to as not rebuttal and purely negative. At the time it was offered, the record disclosed that four witnesses had testified positively Benedict Thompson told them in substance, he had agreed to will or deed the place to plaintiff if he would live on the place and

provide a living for Thompson and his wife while they lived, and another witness had testified, in speaking of this place, Thompson said to him: "Chris has a nice place here, or will have a nice place." In this state of the record the testimony offered was not rebuttal. It did not pretend to deny that Thompson had made each of the statements the witnesses had testified to, and on this ground it was properly excluded. But if we assume the negative testimony offered might be competent if offered at the proper point in the trial, still under the general rule of evidence that "the positive testimony of a single witness is entitled to more weight than that of several witnesses, equally credible, who testify negatively" (Jones on Evidence [3d ed.] § 898), excluding the testimony was error without prejudice. As admitting all defendant proposed to prove to be true, we could not say the clear preponderance of the evidence was against the finding made by the trial court, and, the case being one tried to the court, without a jury, it does not appear that a different result would probably have been reached if the evidence had been admitted.

[5] In assignment No. 4, appellant contends if the contract was made between the plaintiff and Thompson, as alleged in the complaint, it was illegal and void under section 3217, P. C., then in force, which provided that—

"A conveyance or incumbrance by the owner of such homestead shall be of no validity unless the husband and wife, if the owner is married, and both husband and wife are residents of this state, concur in and sign the same joint insctrument."

We think the word "conveyance" as used in this statute should be taken in its ordinary legal meaning as:

"The transfer of property from one person to another by means of a writing and other formalities." 13 C. J. 893.

It follows that what has been done in the instant case is no violation of this statute. No conveyance has been made. Either Benedict Thompson or his wife had the right, separately or jointly, to will their entire interest in this land to plaintiff. Sections 604, 607, and 610, R. C. 1919. They both, joining together, had the right to convey it to him. Section 3217, Pol. C. of 1903. The statute then in force further provided:

"No agreement for the sale of real property, or of an interest therein, is valid unless the same, or some note or memorandum

thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof." Section 1311, R. C. C. 1903.

This statute reserved the power of the court—

"to compel the specific performance of any agreement for the sale of real property in case of part performance."

Neither the homestead statute nor the statute of frauds should become a shield for fraud.

In this case the court has found on sufficient evidence that the contract was made as alleged, and was fully performed by plaintiff. The contract gave to Benedict Thompson and his wife the full benefit of their homestead right. They had no property except this almost entirely unimproved homestead. They were too old and feeble to work. Plaintiff furnished under his contract support for Mrs. Thompson until her death seven years after the contract was made. Besides making the request that plaintiff return, support them, and have the farm, she accepted the full benefits of her husband's agreement for seven years. During all this time she must have had full knowledge of what that agreement was. We think she would be estopped from now questioning the agreement, if she were living. Centerville Township v. Jenter, 25 S. D. 314, 126 N. W. 575; Ford v. Ford, 124 N. W. 1108, 24 S. D. 644; Kothe v. Berlin Township, 103 N. W. 657, 19 S. D. 427; Engholm v. Ekrem, 119 N. W. 35, 18 N. D. 185. Plaintiff also furnished support, care, and medical attendance to Benedict Thompson for more than twelve years and until his death in 1921. While there is a conflict in the authorities on the point here presented, we hold, under section 1311, supra, and in harmony with the former decisions of this court, that where, as in this case, there has been a substantial performance of a contract, which cannot be compensated by money damages, its performance may be specifically enforced, even though the property was a homestead at the time the oral agreement was made. Heran v. Elmore, 157 N. W. 820, 37 S. D. 223; Baker v. Baker, 49 N. W. 1064, 2 S. D. 261, 39 Am. St. Rep. 776; Meade County Bank of Sturgis v. Fredericks, 171 N. W. 607, 41 S. D. 510; 29 C. J. p. 898, § 286; 25 R. C. L. 193 and 191, note 8.

We have carefully considered all the other assignments of error, and, finding them without merit, the judgment of the lower court is affirmed.

Note.—Reported in 207 N. W. 449.  See, Headnote (1), American Key-Numbered Digest, Witnesses, Key-No. 159(3), 40 Cyc. 2314, 2316, Personal transaction, 30 Cyc. 1532, 1533 (Anno.); (2) Evidence, Key-No. 108, 22 C. J. Sec. 114; (3) Trial. Key-No. 62(1), 38 Cyc. 1355, 1360, (4) Appeal and error, Key-No. 1056(1), 4 C. J. Sec. 3004; (5) Specific performance, Key-No. 41, 36 Cyc. 674, Homestead, 29 C. J. Sec. 286.

Specific performance of contract to leave property in consideration of services or support, see note in 44 L. R. A. (N. S.) 733.

Competency of interested witness to testify as to transaction with deceased in which he did not participate, see notes in 29 L. R. A. (N. S.) 1179, 42 L. R. A. (N. S.) 320.

On specific performance of parol agreement for transfer of land, see Pomeroy's Equity Jurisprudence, Secs. 103, 430, 1297, 1409, 2239-2252