In Re ROSENGREN'S ESTATE

KITTELSON, Appellant, v. MEDIN, Respondent

(279 N. W. 540)

(File No. 8157.   Opinion filed May 6, 1938.)

*Danforth & Davenport*, of Sioux Falls, for Appellant.

*Jones, .Matthews & Fitzpatrick* and *Odean Hareid*, all of Sioux Falls, for Respondent.

WARREN, J. Charles Rosengren died testate July 9, 1935. Hon. John T. Medin, the executor named in the last will and testament, applied for letters testamentary to the county court of Minnehaha county, S. D. Thereafter, by proceedings in the county court, he was appointed executor, qualified, and entered upon his duties as such.

Dr. John A. Kittelson, treated Rosengren during his last sickness. Said services commenced on November 22, 1934, and terminated on the day of Rosengren's death. A verified claim, in proper form, was presented to the executor for allowance for the services rendered. The executor rejected the claim. Thereafter, an appeal was taken to the circuit court and tried in the circuit court before a jury. At the close of plaintiff's evidence, the court directed a verdict in favor of the executor, apparently on the ground that the claimant could not prove the claim by the admission of his books of account, because of the provisions of section 2717 of the 1919 Revised Code. Upon rendition of the directed verdict, the court entered a judgment dismissing the claimant's claim. There-

after, the claimant presented a motion for new trial. The trial court overruled the motion for new trial. The claimant has appealed from the order and judgment.

The account, as disclosed by the records, contains various items of medical service rendered to the deceased, Charles Rosengren, during his last illness. The first was a house call on November 21, 1934, and on July 9, 1935 (the last), there were two visits. Between these two dates there appeared to be a number of entries covering visits and the charges for the services. Also, entries of some payments for services rendered. A number of treatments, such as X-rays, injections, and certain tests are shown by the account offered in evidence.

Mr. and Mrs. H. T. Brookfield, who testified as to the condition of Mr. Rosengren's health, had known decedent for considerable time. It appears that Rosengren was in a hospital for some time and that about November 8, 1934, he came to live with the Brookfields. There is evidence as to a talk with Rosengren about the employment of a doctor. As a result of said conversation, the deceased employed the appellant, who commenced making professional calls on November 22, 1934. The testimony of Mr. Brookfield, in substance, is to the effect that Dr. Kittelson came to the house a part of the time every day for several days. There is also some testimony to the effect that later on the doctor's calls averaged two or three times a week. The witness stated that he observed that Rosengren paid Dr. Kittelson part of the time and part of the time he was not paid. Mrs. Brookfield testified that the doctor came quite regularly for awhile and concluded that the visits were two or three times a week until Mr. Rosengren improved, when he would go to the doctor's office. Another witness, Thelma Johnson, testified that she was employed in Dr. Kittelson's office from September, 1934, to May, 1935; that she knew Charles Rosengren and that she saw him several times in Dr. Kittelson's office where he came as a patient; that she did not keep the doctor's books nor did she make any entries therein, as he kept his own books. The appellant, Dr. Kittelson, testified that he did not have a bookkeeper in his office and that he kept his own books; that he kept a day book; that all entries during the day were entered in the daybook; that he afterwards transferred the entries from the daybook into a loose-leaf ledger. He further testified as to the

practice of keeping his books. He identified Exhibits 3 and 4 as daybooks that covered the period of time that he rendered professional services to Mr. Rosengren and that Exhibits 5 and 6 were the ledger sheets, taken from his loose-leaf ledger, covering the items concerning the services rendered to Rosengren and that they contained the entries of his daybooks, Exhibits 3 and 4. Upon completion of the testimony concerning the manner and method of keeping his books of account and concerning the exhibits containing the original entries made contemporaneous with the services rendered to the deceased, the books of entries, Exhibits 3 and 4, were offered in evidence for the purpose of showing that they compared with entries in Exhibits 5 and 6. Respondent objected to the reception of said exhibits as being incompetent, irrelevant, and immaterial, and for the further reason that they were incompetent under the provisions of subdivision 2 of section 2717, 1919 Revised Code, as relating to and being a part of transactions by the witness with a deceased person represented by respondent, and also upon the further ground that the entries purported to concern privileged communications between the doctor and his patient. This, in substance, covers the objection to the exhibits.

The court sustained the objection. Additional testimony was then offered concerning the reasonableness of the charges as based upon the records. Respondent objected to this testimony as being incompetent, irrelevant, and immaterial, and that there was not sufficient foundation as the exhibits had not been received in evidence. At this point it appears from the record that the objection was sustained and particularly for the reason that there was no proof in the record as to what services, if any, had been rendered. Appellant thereupon made a further attempt to place testimony in the record so as to secure the admission of the exhibits covering the services rendered to the deceased, and we quote the following from the record:

"John A. Kittelson, recalled, testified:

"I have heard the testimony of Mr. and Mrs. Brookfield and also the testimony of the girl in my office. Q. Now, Doctor, on those various occasions, what were the particular things that you did for Charles Rosengren, not giving any conversation, but just the facts of the things that you did?

"Mr. Jones: That is objected to for the reason that it is in-

competent, irrelevant and immaterial, clearly relating to a transaction with the Deceased, Charles Rosengren, and is incompetent under the provisions of section 2717, subdivision two, and the witness is incompetent to testify thereto for the same reason.

"The Court: Sustained.

"Witness continues:

"In my book I entered in the day book, Exhibits 3 and 4, payments of money as made by patients, and I do that in all cases, and I would make that daily in my books, and I did that in reference to Charles Rosengren. Those exhibits, my day book and journal, are all in my handwriting. I am acquainted with the charges generally in the community, for physicians and surgeons, and the charges that I have entered in the book from day to day for my patients are fair, ordinary and reasonable charges for the care and services rendered.

"Mr. Danforth: Now we renew our offer of Exhibits 3, 4, 5 and 6 on the basis of the additional foundation.

"Mr. Jones: To which Respondent makes the same objection previously made to said exhibits, and for the further reason that the same are self-serving and hearsay.

"The Court: Sustained.

"Witness continues:

"There were no other payments or credits by my patients that are not entered in those books."

Plaintiff rested and defendant moved for a directed verdict in his favor, which was granted.

Assignments of error relate to the admissibility of the books of account of the appellant, kept by him in the regular course of his business and in the regular way.

Respondent claimed that the books of account were inadmissible for the reason that they were part of and constituted a transaction with the decedent within the prohibition of section 2717 of the 1919 Revised Code. Subdivision 2, thereof, reads as follows: "2. In civil actions or proceedings by or against executors, * * * neither party * * * shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called * * *."

Our statute uses the term, "any transaction whatever with." From prior decisions we learn that we have placed some stress upon the interpretation expressed by the Iowa Supreme Court in McElhenney v. Hendricks, 82 Iowa 657, 48 N. W. 1056, and Hutton v. Doxsee, 116 Iowa 13, 89 N. W. 79, on the word "transaction" and have rather indicated that, when book accounts are kept personally by the claimant, they should not be construed as "transactions." This court, in the case of Hanson v. Fiesler, 49 S. D. 442, 207 N. W. 449, reviewed a number of authorities and we feel that the decision indicates a rule that would permit this character of book entries to be admitted in evidence. Knittle v. Ernst et al., 40 S. D. 594, 168 N. W. 754; Dysart v. Furrow, 90 Iowa 59, 57 N. W. 644; and In re Davis' Estate, 217 Iowa 509, 248 N. W. 497. The plaintiff in the Hanson Case was permitted to testify and lay the foundation for certain books and records showing payment of bills for deceased and what the checks were given for. See, also, First National Bank of Bottineau v. Warner et al., 17 N. D. 76, 114 N. W. 1085, 17 Ann. Cas. 213. In the case of Hanson v. Fiesler, supra, we held that transaction in our statute meant the same as "personal transaction" and that it was the equivalent of the phrase "any transaction whatever." Clearly, the book entries contained in the exhibits could in no sense be called "personal transactions" with the deceased and the appellant was surely competent to testify as to making the entries therein, which fact could not be contradicted by the decedent were he alive. However, at this point we are confronted with respondent's contention that it is encumbent to show "that the entries are true and correct." We find this statement of the rule to be a part of a quotation from Jones on Evidence quoted in Haley & Lang Co. v. Del Vecchio, 36 S. D. 64, 153 N. W. 898, 900 L. R. A. 1916B, 631. The rule is stated, partly, as follows: "Also that the entries were true and correct, and contemporaneous with the transaction." The evidence before us is sufficient on the latter part of the above rule, that the entries were made contemporaneous with the transaction. But as to the first part of the rule, "that the entries were true and correct," it needs deliberate consideration. By process of elimination, we determine that it has no reference to the value of the services, because that may be proved by other means and witnesses. That inference being eliminated, it must have reference to the en-

try of the items as it is used in connection with "when the items were entered." In other words, "entries were true and correct" must mean that the person who performed the mechanical operation of the bookkeeping should make the entries at or near the time the transaction took place and record them correctly in the sense that the items would correctly reflect the services rendered in a case such as this, or in orther cases, for instance, in sale of merchandise, the kind, quality, and price. Dr. Kittelson testified that he kept his own books. He knew of the transactions. Therefore, the situation was not comparable to the facts in Haley & Lang Co. v. Del Vecchio, supra. In that case, others than the individual who did the bookwork had first knowledge of the transactions. However, the court permitted the books to be admitted in evidence, even in the face of the statement used earlier in the opinion to the effect that entries "were true and correct." The court later in the opinion, said that there was sufficient foundation to admit the books in evidence. It would therefore seem that this rule requiring that the entry be true and correct was adopted for the purpose of recording the transactions at the time they occurred in such a way that they would be carried into the books with the highest degree of accuracy. In Wilson et ux. v. Prudential Ins. Co., 276 Mich. 232, 267 N. W. 824, 825, the court said: "Defendant claims that beneficiaries are not persons who may evoke the protection of this statute. See Schempf v. New Era Life Ass'n. 253 Mich. 152, 234 N. W. 177, to the contrary. The court was in error in holding that the statute prohibiting testimony equally within the knowledge of deceased applied to books of account. By the great and overwhelming weight of authority, books of account properly presented are admissible for whatever evidentiary force they may have in order to establish a claim against the deceased person despite statutes, like the one in Michigan, prohibiting testimony as to matters equally within the knowledge of the deceased." (And see numerous other authorities therein cited.)

See sections 371 to 383, inclusive, under Evidence, 10 R. C. L., on admission of books of account.

That the books of account contained reference to treatments rendered to the decedent, is, of course, true, and, as such, the books would testify as to what took place between the parties, yet it cannot be successfully maintained that the receiving of the books

in evidence is equal to permitting the appellant to testify as to what took place. Under our holding in Hanson v. Fiesler, supra, and the cases therein cited, we believe that the facts in the case before us come well within the rule that these transactions are not personal transactions.

The effect of section 2717 is to render all persons competent to testify except in the cases specified. To us it would seem that, if we are to hold as strenuously contended for by the respondent, we would be doing injustice. The statute, instead of being a source of protection, and a shield, could be easily invoked to act as a sword and so defeat honest claims. That such is the view of eminent jurists, judges, lawyers, text and law writers, is quite evident from the contents of our law journals and law books.

For a history of the two branches of the exception, see 3 Wigmore on Evidence, 2d Edition, § 1517 et seq.; and as to testimony and admission of books where one of the parties is dead, see sections 1521 to 1533, both inclusive, of the same volume.

The Supreme Court of Minnesota, in a recent decision, Schoonover v. Prudential Ins. Co., 187 Minn. 343, 245 N. W. 476, 480, declares in favor of the liberal rule, as follows: "The reception in evidence of certain books and records of the company is said to have been error. This court follows the liberal rule that books and records, made and kept by a business man or concern in the usual course of business, are generally admissible in evidence, and whether sufficient foundation has been laid therefor rests with the trial court. State v. Virgens, 128 Minn. 422, 151 N. W. 190." Topinka v. Mutual Life Ins. Co., 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739; Consolidated Pipe Line Co. v. British American Oil Co., 163 Okl. 171, 21 P. 2d 762; Baldwin Piano Co. v. Wylie, 63 N. D. 216, 247 N. W. 397; 30 Am. & Eng. Ency. of Law, 2d Edition, 1031; Plowman v. King, 174 Iowa 122, 156 N. W. 355; Jeffords v. Muldrow, 104 S. C. 388, 89 S. E. 357, 6 A. L. R. 755, and annotations.

From an examination of our own decisions, it seems to have been the aim of this court, in considering the legislative intent, to hold that the Legislature did not intend to extend the statute beyond the express language, and to render all persons competent to testify except in the cases specified, and to render a witness incompetent he must come clearly under the exception. In the

late decision of McKay v. Brink, 65 S. D. 472, 275 N. W. 72, this court referred to an earlier decision, In re Golder's Estate, 37 S. D. 397, 158 N. W. 734. In this decision the court again referred to the Iowa-North Dakota rule that the prohibition related only to personal transactions.

In conclusion it seems that the modern trend of authorities fully sustains the quite advanced position this court elected to follow, and we see no good reason at this time to recede, and must therefore hold that the court erred in refusing to admit appellant's exhibits, the book entries, in evidence.

We take it that the objection interposed under privileged communications between patient and physician is not before us as it has not been argued, and therefore, under our familiar rule, it will be deemed abandoned.

The order and judgment appealed from are reversed.

POLLEY and RUDOLPH, JJ., concur.

ROBERTS, P. J., and SMITH, J., concur in result.