Dick **SMITH** and Wilbur Smith, Plaintiffs and Appellees,

v.

**HIGHMORE FARM LIMITED PARTNERSHIP and Paul Bunn, Defendants and Appellants.**

Nos. 17656, 17657.

Supreme Court of South Dakota.

Considered on Briefs May 28, 1992.

Decided Aug. 19, 1992.

Rick Johnson of Johnson, Eklund & Abourezk, Gregory, for plaintiffs and appellees.

Robert L. Varilek, Rapid City, for defendants and appellants.

SABERS, Justice.

This is an action for breach of farm leases. Lessor Bunn appeals denial of summary judgment, submission of damages to the jury and admission of exhibits. We affirm. Lessee Smith cross appeals the court's remittitur of the jury award. We reverse and remand.

### FACTS

Richard Smith (Smith) and his father, Wilbur Smith, were partners in a farming business. In 1984, Smith leased certain farmland from Paul Bunn (Bunn) for five years. In exchange for Smith's surrender of the last four years of that lease, Bunn leased Smith other farmland that he owned personally or controlled as a general partner in Highmore Farm Limited (Highmore). There were two separate leases. The first was for 1,280 acres (Area 1) owned by

Bunn personally; and the second was for 6,600 acres (Area 2) owned by Highmore.

Both leases included expiration dates of August 31, 1989, but provided they would automatically renew for an additional year unless written notice of termination was given by either party thirty days prior to the expiration date. In 1988, Bunn and Smith had several conversations in which Bunn stated the leases would not be renewed. Smith claims he did not take Bunn seriously and expected Bunn to abide by the terms of the leases. Bunn advised Smith that the property would be leased to Dean Newman (Newman) at the expiration of Smith's leases.

In late 1988, due to Smith's concerns over the possible loss of the leases to Newman, Smith and Newman agreed that Newman would purchase Smith's interest in the land that remained in stubble under both leases. This stubble area (Area 3) contained 3,159.6 acres from Areas 1 and 2. The agreement was originally titled "Agreement for Sale of Farm Lease" but was changed, at Smith's urging, to "Agreement for Sale of Stubble" (Agreement). Bunn was advised of and consented to the Agreement prior to its execution in December, 1988. As indicated, this Agreement covered 3,159.6 acres of the 7,880 acres Smith was leasing from Bunn. Under the Agreement, Smith reserved his leasehold interest in "planted summer fallow wheat and government payments related thereto and to use the shop and headquarters facilities." Newman paid Smith $47,000 for the Agreement. Bunn leased all of Area 2 to Newman on November 14, 1988, which was prior to the execution of the Agreement.

On August 11, 1989, Smith wrote Bunn that, since Smith had not received the written notification required under the leases, he would continue to farm the land for an additional year. On August 16, 1989, Smith received a letter from Newman's attorney which stated that Newman had a lease from Bunn on the same property. This letter provided:

> My clients tell me that if your clients attempt to enter on the premises, they will be shot on sight.

Smith heeded this warning and did not attempt to continue to farm the property. On one occasion, Smith returned to get some supplies and equipment that he had left on the Bunn property. However, Bunn responded by renewing the shooting threat unless Smith left the property, which he did.

Smith brought a declaratory judgment action against Bunn to determine his rights under the leases and for damages. Bunn answered, counterclaimed and filed a third-party complaint against Newman. Newman answered and counterclaimed against Bunn. This third-party action has not been resolved. Smith and Bunn moved for summary judgment and both motions were denied. After further discovery, Bunn and Newman again moved for summary judgment against Smith, but again both motions were denied. The case was tried to a jury which returned a verdict for Smith in the amount of $102,000. Bunn moved for judgment n.o.v. or for new trial. In response, the trial court entered an amended judgment and reduced damages to $69,360.

Bunn appeals claiming the court erred by (1) denying his motion for summary judgment; (2) submitting instructions and (3) the question of damages to the jury; (4) holding that Smith had not waived his rights under the leases; (5) holding that Smith was not estopped from denying termination of the leases; (6) admitting exhibits 7 thru 11 for purposes of illustration; and (7) Smith cross-appeals claiming the court erred by reducing the jury award to $69,360.

### 1. SUMMARY JUDGMENT.

■ Bunn claims the court erred by denying the motion for summary judgment and by submitting the case to the jury. Summary judgment is proper only where 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991) (quoting *Breen v. Dakota Gear & Joint Co.*, 433 N.W.2d 221, 223 (S.D.1988)). "The evidence must be viewed most favorable to the non-mov-

ing party and reasonable doubts should be resolved against the moving party." *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 164 (S.D.1987).

Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Garrett v. Bankwest, Inc.,* 459 N.W.2d 833, 836–37 (S.D.1990) (quoting *Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989)).

■ Bunn states there was no genuine issue as to any material fact and he was entitled to judgment as a matter of law. The trial court stated the case turned "on the construction of the termination clauses in two written Farm Leases." The court determined that "Smiths have never received a written notice of termination as required by the farm leases ... [and] [f]or defendants to prevail on their motion for summary judgment the Agreement for Sale of Farm Stubble must be an assignment of the farm leases." The lease termination clauses and the Agreement are plain and unambiguous. *See American State Bank v. Adkins,* 458 N.W.2d 807, 809 (S.D.1990). If any ambiguity did exist, it must be construed most strongly against the drafter of the contract. *See Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 152 (S.D.1986); *Hicks v. Brookings Mall, Inc.,* 353 N.W.2d 54, 56 (S.D.1984). Bunn, an attorney, drafted both leases and Newman's attorney drafted the Agreement.

The Agreement stated that Smith had leases from Bunn and legally described the land in Areas 1 and 2. The Agreement stated that those leases ended on August 31, 1989, but page 2 provided:

Sellers [Smiths] convey Sellers' interest in the *following portion* of their leasehold on the foregoing property to Buyers:[.]

(emphasis added). The Agreement then legally described those *portions* of Areas 1 and 2 which we have named Area 3. Smith sold Newman his rights to 3,159.6 acres or 32% of the total 7,880 acres leased from Bunn.[1] The trial court concluded that since "the Agreement ... granted Newman less than the entire leasehold, it cannot be the writing necessary to execute an oral agreement terminating the entire leasehold held by Smiths."

The trial court referred to the Agreement as a sublease. The Agreement did not contain a reservation by Smith of any reversionary interest in the 3,159.6 acres. Therefore, Smith sold or assigned every right he had in those 3,159.6 acres but retained his rights in everything not conveyed. The trial court concluded that Bunn failed to establish that he was entitled to judgment as a matter of law and denied his motion for summary judgment. We find no error with that conclusion.

## 2. MOTION FOR DIRECTED VERDICT.

■ At the close of all the evidence, Bunn moved for a directed verdict claiming again that Smith admitted to receiving oral notice of termination and that the Agreement operated as both written notice and as an assignment of all of Smith's rights under the leases. On motion for directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party.

If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate.

*Carlson v. First Nat'l Bank,* 429 N.W.2d 463, 466 (S.D.1988) citing *Cox v. Brookings Int'l Life Ins. Co.,* 331 N.W.2d 299, 300 (S.D.1983). On review, the trial court's rulings on such motions are presumed correct and we will not seek reasons to reverse. *Bankwest, Inc. v. Valentine,* 451 N.W.2d 732, 734 (S.D.1990). The trial court denied the motion based on the conflict in the evidence and because the Agreement did

---

1. According to the legal descriptions contained in the leases, the total acreage leased by Smith was 5,920 acres. However, Bunn did not object to Smith's figure of 7,880 acres at trial and has not raised this matter on appeal. Therefore, this is not an issue. *Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D.1981); *State v. Helmer,* 278 N.W.2d 808, 813 (S.D.1979); *In re Rosengren's Estate,* 66 S.D. 138, 279 N.W. 540, 544 (1938).

not cover all of Smith's leasehold rights. As noted in issue 1, the Agreement was an assignment of Smith's leasehold rights in Area 3 only. Therefore, since Smith did not make an assignment of the total leasehold and did not receive written notice under the leases, Bunn failed to show he was entitled to a directed verdict. We find no error with the trial court's conclusion. *Carlson*, 429 N.W.2d at 466.

### 3. DAMAGES.

Bunn claims the court erred by submitting the issue of damages to the jury. Damages are controlled by SDCL 21-2-1:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

Bunn claims that since Smith was the only person to testify as to damages and failed to produce any farm records to verify his damage estimates, the evidence on damages was speculative, and therefore incalculable in violation of SDCL 21-2-1. However:

> Under any damage model, 'there need only be a reasonable basis for measuring the loss and it is only necessary that damages can be measured with reasonable certainty.'

*Tri-State Refining and Inv. Co. v. Apaloosa Co.*, 452 N.W.2d 104, 110 (S.D.1990) quoting *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 118 (S.D.1977). Bunn's leasing of Area 2 to Newman prior to the expiration of Smith's lease and the subsequent threats caused Smith to suffer damages because he was unable to farm the portions of Areas 1 and 2 he retained. This was more than mere speculation. Therefore, the uncertainty caused by absence of farm records or expert agricultural witnesses only goes to the amount of damages.

> Where doubt exists as to certainty of damages, those doubts should be resolved against the wrongdoer.

*Tri-State*, 452 N.W.2d at 110. Smith presented evidence of anticipated expenses and profits based on the three years he farmed Areas 1 and 2, county crop averages and 20 years of personal experience. Our review of the evidence reveals ample evidence upon which to submit the question of damages to the jury. *See Carnicle v. Swann*, 314 N.W.2d 311, 313 (S.D.1982).

### 4. WAIVER, AND 5. ESTOPPEL.

Bunn claims the court erred by denying the motion for directed verdict. This motion was based on claims that Smith's conduct constituted waiver of his rights under the leases and that Smith should have been estopped from denying termination of the leases. As noted above, the trial court concluded that the conflict in the evidence was sufficient to allow reasonable minds to reach differing conclusions. *Carlson*, 429 N.W.2d at 466. Therefore, whether Smith's receipt of oral notice of termination and his sale of a portion of the leasehold constituted a waiver of his rights or should estop him from denying termination was a question for the jury and improper for a directed verdict. *Id.* The court instructed the jury on waiver and estoppel, without objection, and these issues were properly before the jury.

### 6. ADMISSION OF EXHIBITS.

Bunn claims exhibits 7 thru 11 were speculative and inadmissible. These exhibits were admitted at the conclusion of Smith's testimony on damages. Exhibits 7 and 8 were tabulations of Smith's testimony of estimated expenses and profits for Area 1 for the 1990 crop year. Exhibits 9 and 10 were tabulations of Smith's testimony of estimated expenses and profits for Area 2 for the 1990 crop year. Exhibit 11 was a one page summary of exhibits 7 thru 10.

Statements prepared for use at trial are not ordinarily admissible. The trial

court may, in its discretion, admit such statements when they are merely tabulations or summaries of other evidence already properly admitted. SDCL 15–14–20; *See Remmers v. Remmers*, 200 Neb. 647, 264 N.W.2d 857, 859 (1978). The court admitted these exhibits as illustrative of Smith's prior testimony and stated that the weight to be accorded them was up to the jury. We find no abuse of discretion in admitting these exhibits.

### 7. REMITTITUR [2] OF DAMAGES.

■ Smith cross-appeals claiming the court erred by amending the verdict and reducing the jury award from $102,000 to $69,360. The jury award was based on Smith's testimony and Exhibits 7 thru 11. Smith based his estimates and calculations on the inability to farm the entire leasehold. As noted above, Smith assigned all his rights to 32% of his leasehold to Newman. In reducing the award, the trial court stated:

> [T]he court does find that the verdict is excessive as a matter of law. The damage estimates provided to the jury were based on damages to all the acreage of Highmore Farms. As a matter of law, the sale of the farm stubble divested plaintiff of any interest in the land Smiths sold to Newman ... during the crop year for which Smith figured his damages. Mr. Johnson [Smith's attorney] recognized this and made it part of his closing argument saying:
>
> > The sale of the sublease or whatever it is, of a portion of their property for 3,000 acres out of the 8,000 was given to Newman ... It would seem to me that the only possible—that I divided that out, that comes to 32 percent. There is just absolutely no question that 68 percent of this property was owned, controlled [by Smiths], and they were on the dance floor, no re-

lease of their obligations for 68 percent of the property. And at the very minimum, under the wildest, best interpretation of the evidence of Mr. Varilek and his clients, Smiths should be entitled to that 68 percent of those damages, which comes to something like 80,000 bucks.

> Extensive checking of the evidence on damage (exhibits number 7–11) discloses the correct amount of damages is more in line with Mr. Johnson's characterization of the evidence. The jury awarded damages for the entire Highmore Farms property to Smiths when, in fact, Smiths suffered damage only to the 68% they did not sell to Newman.... The jury award of $102,000 was based on Smith's loss of net income on the total acreage. The correct figure should be computed on 68% which is $69,360.

In *State Highway Commission v. Bloom*, 77 S.D. 452, 93 N.W.2d 572, 582 (S.D.1958), this Court stated that, although a court may not generally substitute its judgment for that of the jury in determining damages,

> the province of a jury is not invaded when a Court in the exercise of its judicial powers determines as a matter of law that a verdict or an award is not sustained by the evidence....

*Id.* 93 N.W.2d at 581. *Bloom* goes on to state the rule of law set forth in *Kidder v. Aaron*, 10 S.D. 256, 72 N.W. 893, 893–94 (S.D.1897):

> [I]n all cases where the only error in a judgment is that the amount of the recovery is excessive, and the excess may be so segregated that the Court can distinguish and separate the erroneous part, ... the common practice is ... to permit the party recovering the excessive judgment to file a remittitur....

*Bloom*, 93 N.W.2d at 582 (citing 3 Am.Jur., *Appeal and Error*, § 1174). The Court in

---

**2.** Remittitur is defined as:

> The procedural process by which a verdict of the jury is diminished by subtraction.

> If money damages awarded by a jury are grossly excessive as a matter of law, the judge may order the plaintiff to remit a portion of the award. In the alternative, the court may

order a complete new trial or a trial limited to the issue of damages. The court may also condition a denial of a motion for new trial upon the filing by the plaintiff of a remittitur in a stated amount. Fed.R.Civ.P. 59(a).

Black's Law Dictionary 1164 (5th ed. 1979) (citations omitted).

*Carter v. District of Columbia*, 795 F.2d 116 (D.C.Cir.1986) stated:

> Except when 'it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there,' a trial judge should not unconditionally reduce the amount of damages awarded by verdict, for to do so impermissibly encroaches upon the litigants' constitutional right to a jury.

*Id.* at 134 (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2815, at 99 (1973)).

 Smith's total damage estimate of $101,937.61 and the resulting jury verdict of $102,000 were based on 100% of the leasehold. The amount of land retained and damages appear identifiable and calculable at 68% of the total based on the closing statement of Smith's counsel. Therefore, the jury award was improperly based on the total acreage and the court reduced the award by 32%. However, once the trial court found the verdict excessive, it only had two options. First, it could grant a new trial *if* the verdict was influenced by passion and prejudice. *See* SDCL 15–6–59(a)(5). Or secondly, it could deny the motion for new trial on the condition that the prevailing party consent to a reduction in damages. *Kunz v. Johnson,* 74 S.D. 577, 57 N.W.2d 116 (1953); *Miles v. Fall River Cty.*, 50 S.D. 240, 209 N.W. 360 (1926). Therefore, the court should have provided the recovering party the option of accepting the remittitur or a new trial under SDCL 15–6–59(a). *Bloom,* 93 N.W.2d at 582; *Kunz, supra* and *Miles, supra.* We reverse and remand for this purpose.

MILLER, C.J., and WUEST, HENDERSON, and AMUNDSON, JJ., concur.