Hill v. Ressegieu.

## HILL *vs.* RESSEGIEU.

The heirs of a vendor are bound to fulfill his contract to convey, to the extent of the estate that descends to them.

An infant heir is also bound to convey, and may be decreed to do so, notwithstanding his minority.

But in this state, ordinarily, our courts will not compel an heir, whether an infant or adult, to enter into personal covenants in pursuance of an agreement made by the ancestor.

An heir may be compelled to convey, in pursuance of the contract of his ancestor, although not named in the contract.

Where a vendor agreed to convey by *a good and sufficient deed, free of all incumbrances,* and died leaving a widow entitled to dower in the land, and three heirs, two of whom were adults and one an infant ; the infant was directed

to convey, but without covenants, and the adult heirs were decreed to convey, with covenants *against their own acts;* on payment of the sum due from the vendee, by the terms of the contract, deducting out of each payment due and to become due, a proportionate share of the value of the widow's right of dower.

THIS was a suit for the specific performance of an agreement to convey real estate. The following facts and allegations were set up in the complaint. On the 26th September, 1849, Nathaniel Ressegieu and the plaintiff entered into an agreement for the purchase and sale to the plaintiff of a farm, at $34 per acre, supposed to contain 97½ acres, to be conveyed by *good and sufficient deed* on the 15th of April, 1851—Ressegieu to use it for firewood, and to have the use of the buildings in the meantime, but to farm it in a workmanlike manner, and then yield possession. The plaintiff was to pay $1500 on the 15th of April, 1851, and to secure the balance by a bond and mortgage payable in installments; the plaintiff to have the privilege of putting in grass seed in the spring of 1850, and plowing in the fall of that year; of getting firewood the following winter, and plowing in the spring of 1851. The plaintiff had a right to elect to have it surveyed. If either party failed, he was to pay the other $200. The plaintiff sowed some grass seed and grain in the fall of 1850, plowed some that fall, and got wood and logs the winter following, with the defendant's consent, and sowed grain in the spring of 1851. Ressegieu died in October, 1850, solvent, worth $1000 besides this land, and leaving a widow and three sons, Dan, John and Ephraim; the latter between 14 and 21 years of age. The plaintiff, on the 15th of April, 1851, tendered the sons, who were the defendants, $500 each, and offered to give a bond and mortgage for the balance of the purchase money, and offered to do all and every thing required, and presented a deed for execution to Dan and John, and also offered money to Ephraim, all of which they refused. The deeds presented for execution contained covenants to *warrant and defend* the land, in the quiet and peaceable possession of the plaintiff, and that the same was *free from incumbrances.* Dan and John each offered to execute a quitclaim deed of an undivided

one-third. Ephraim, by his guardian, demurred, assigning as reasons, that the plaintiff was not entitled to the relief he sought; that the defendant was an infant; and that the widow had a right of dower. Dan and John answered, denying that the plaintiff had cut logs, &c. with their knowledge and consent, and stated that, soon after the death of their father, they notified the plaintiff that the widow could not release her right of dower, and that it was impossible for them to perform the contract, and that they would pay him $200, the forfeiture mentioned, if he would give up and cancel the contract; and in February, 1851, forbade him cutting logs, &c. and informed him that a deed would not be given in pursuance of said contract. And after the plaintiff had refused the quitclaim deeds, they caused $200 to be tendered to him, and offered to pay him for his labor on the farm, and informed him that the widow refused to release her right of dower. The plaintiff *demurred* to this answer, all except that part which stated that it was impossible for the defendants to perform the contract, and that they had expressly informed the plaintiff that a deed could not be given in pursuance of said contract, of which the plaintiff denied he had any knowledge or information sufficient to form a belief.

*T. B. Mitchell,* for the plaintiff.

—— *Martin,* for the defendants.

*By the Court,* HAND, J. A vendor who covenants to give a good and sufficient deed of conveyance, free of all incumbrances, is bound to make an operative conveyance; one that carries with it the title to the land. Even a deed with covenants of warranty is not sufficient, if the vendor has no title, or an imperfect one. (*Everson* v. *Kirtland,* 4 *Paige,* 628; *Fletcher* v. *Button,* 4 *Comst.* 396. *Clute* v. *Robison,* 2 *John.* 595. *Jones* v. *Gardner,* 10 *Id.* 266; *Carpenter* v. *Bailey,* 17 *Wend.* 244. *Traver* v. *Halsted,* 23 *Id.* 66. *Church* v. *Brown,* 15 *Ves.* 263.) And in the last case, Lord Eldon thought it carried a right to proper covenants.

Hill *v.* Ressegieu.

And the heirs of a vendor are bound to fulfill his contract to convey, to the extent of the estate that descends to them. (1 *Sugd. V. and P.* 275, 320. *Sutphen* v. *Fowler,* 9 *Paige,* 280. 2 *Stor. Eq. Jur.* 788. *Eaton* v. *Sanxter,* 6 *Sim.* 516. *Champion* v. *Brown,* 6 *John. Ch.* 410.) And an infant heir is also bound to convey. (*Sutphen* v. *Fowler, supra.* 2 *R. S.* 194, § 169. 1 *Sugd. V. and P.* 329.) The widow cannot be compelled to convey. Certainly not, unless she executed and acknowledged the agreement. (*Knowles* v. *McCamly,* 10 *Paige,* 342. *Emery* v. *Wase,* 5 *Ves.* 846. 1 *Sugd. V. and P.* 330.) But where a title to a part fails, or the vendor's interest is less than is provided for in the agreement, the vendee may generally claim a specific performance, to the extent of the ability of the vendor, with an abatement or compensation for the deficiency. (*Morss* v. *Elmendorf,* 11 *Paige,* 277. 2 *Stor. Eq. Jur.* § 779. *Hanbury* v. *Lichfield,* 2 *My. & K.* 629.) " It is familiar to come to this court for a specific performance of an agreement, the whole benefit of which the party cannot have ; and if he waives that part, it is not competent to the other party to refuse to perform the rest, as the whole cannot be executed." (*Lord Elden in Mestaer* v. *Gillespie,* 11 *Ves.* 640. *Hill* v. *Buckley,* 17 *Id.* 401. *Milligan* v. *Cooke,* 16 *Id.* 1. *Waters* v. *Travis,* 9 *John.* 465. *King* v. *Bardeau,* 6 *John. Ch.* 38. 1 *Sugd. V. and P.* 485. *Bennett* v. *Fowler,* 2 *Beav.* 302.) The converse of this rule, it is true, does not prevail. The vendee cannot be made to take a doubtful title ; though courts of equity do not warrant title ; and it is impossible that there should be a mathematical certainty of a good title. (2 *Sugd. V. and P.* 165. *Heath* v. *Heath,* 1 *Brown's C. C.* 148. *Tomlin* v. *Steene,* 3 *Meriv.* 223. *Hillary* v. *Waller,* 12 *Ves.* 252. *Lyddall* v. *Weston,* 2 *Atk.* 19.) Nor does the agreement to pay a certain sum, in case of failure to perform, prevent a specific performance. (2 *Stor. Eq. Jur.* 715. 1 *Sugd. V. and P.* 353.)

I find no good reason, then, why the heirs of the vendor should not convey. It is not pretended that the contract is not a fair one, and fairly made ; the life estate of the widow is no

excuse to the heirs, if the purchaser will, notwithstanding, take the estate.

It is said, the power of this court to compel a specific performance, is to be exercised with sound discretion, and not as a matter of course. (*Seymour* v. *Delacny,* 3 *Cowen,* 505.) That discretion, however, must not be arbitrary or capricious, but regulated on grounds that will make it judicial. If the contract is by a competent party, and in its nature and circumstances unobjectionable, it is as much a matter of course to decree performance as to give damages at law. (*Id.*) But the plaintiff insists that the heirs should give a deed with covenants; and the deeds presented to the adult heirs, to be executed, contained covenants for quiet enjoyment and against incumbrances. It has been decided in this state, that an infant heir cannot be compelled to execute a deed with personal covenants. (*In the matter of Ellison,* 5 *John. Ch.* 261. *And see* 2 *Saund.* 7, *a, f.*) In that case, the chancellor compelled a conveyance of the interest of the heir, but invested the consideration money until the infant became of age. (*And see St. Clair* v. *Smith,* 3 *Ham. R.* 365.)

What covenants, if any, must the adult heir insert in his deed? The agreement is to convey by a *good and sufficient deed, free of all incumbrances.* The heir is not named, which was usually necessary, to bind him. (2 *Saund.* 137, *a. Platt on Cov.* 448. *Rawle on Cov.* 438.) But an heir will be compelled to convey, though not named. (*Gell* v. *Vermedum*; 2 *Freem.* 199. 1 *Sugd. V. and P.* 321. 2 *R. S.* 194, § 169.) But I am inclined to think, that in this state, ordinarily, our courts will not compel the heir to enter into personal covenants in pursuance of an agreement by the ancestor. The agreement, in equity, amounts to an equitable conversion, and the purchase money goes into the personal estate. (*Champion* v. *Brown,* 6 *John. Chan. Rep.* 398. *Dart's V. and P.* 121 et seq. *Swartwout* v. *Burr,* 1 *Barb. S. C. Rep.* 495. 2 *Story's Eq.* § 790. *Townley* v. *Bedwell,* 14 *Vesey,* 591. *Eaton* v. *Sanxter,* 6 *Sim.* 516.) And the heir can be compelled to perform, on the petition of the personal representatives. (2 *R. S.*

194, § 169.) It is alleged, and not denied, that the estate in this case, irrespective of this property, is solvent. The personal representatives may be considered as trustees of the personal estate, and as to the surplus for distribution, the defendants are some of the *cestuis que trust*. And I am aware that in England the practice, in some cases, is to have the *cestuis que trust* join in the conveyance, with the usual covenants. (2 *Sug. V. and P.* 452. *Rawle*, 419, 420.) And it has been said that the heir must covenant. (*Pool* v. *Pool*, 1 *Chan. R.* 18; *S. C.*, 14 *Vin.* 260. *Dart, V. and P.* 261. 2 *Sug. V. and P.* 485.) *Pool* v. *Pool* I do not find cited by Sugden, Dart, or Rawle; and Platt merely cites it with many others upon the general principles of the liability of the heir. (*Platt on Cov.* 449.) There, after contract, the vendor sold to his son, who, after the death of his father, was ordered to covenant to clear the premises from leases and incumbrances. No doubt he had notice, and I suppose these covenants were against his own acts. Sugden says, where the heir is not named, he must perform the agreement in *specie*, and cites *Gell* v. *Vermedum*, (*supra*.) In that case, however, the ancestor did not covenant for his heirs.

But, even were the heir liable at common law, I think a different rule prevails in this state. The reason of the rule as to *cestuis que trust*, is, it is said, because of the purchaser's liability to see to the application of the purchase money. (*Rawle*, 420. *Dart, V. and P.* 213. 3 *Sugd. V. and P.* 150.) That liability here does not now extend to payments to the trustees, made in good faith. (1 *R. S.* 730, § 66. 10 *Paige*, 282.) And if the heir should join in a deed with covenants, for that reason, so should all the distributees of the personal estate. Where the trustee, or perhaps heir, came into court to compel a specific performance of an agreement to convey, particularly if with covenants, the rule was different. (*Page* v. *Broom*, 3 *Beav.* 36. *Dart, V. and P.* 262.)

The plaintiff, however, contends that at least the defendants should covenant to the extent of the assets that shall be received by them; but I find no case of such a covenant. And it would be difficult to define the extent of their liability respectively.

It is like a sale by trustees under a will, to pay debts, and the residue given over, where the purchaser is not entitled, in England, to covenants for title, because no line can be drawn as to the *quantum* which would make a person liable. (2 *Sugd. V. and P.* 452.) Our statute makes the heirs liable for all debts and covenants of the ancestor, to the extent of the land descended to them. (1 *R. S.* 739, § 141. 2 *Id,* 452, § 32.) But the heir is not liable for the debts of the ancestor until a deficiency of the personal estate is shown, or the remedy against the personal representatives exhausted; nor within three years from the time of granting letters. (2 *R. S.* 452, 3. *Id.* 109. *Wambaugh* v. *Gates,* 11 *Paige,* 505. *Butts* v. *Genung,* 5 *Id.* 254.) Nor do I understand the rule to be different in an action against the heir, to recover upon ordinary covenants. (1 *R. S.* 739, § 141.) A covenant against incumbrances, it is said, is broken, if at all, when made. (*Dimmick* v. *Lockwood,* 10 *Wend.* 142.) Had the vendor, in this case, given a deed in his lifetime, the personal representatives would have been liable for a breach of the covenant against incumbrances. And so at law, they would also be liable for his breach of his covenant to convey. But the heirs, if they have not aliened any part of the property descended, cannot be charged personally on claims against his estate. (*Schermerhorn* v. *Barhydt,* 9 *Paige,* 28.) Lineal and collateral warranties, with all their incidents, are here abolished by statute. (1 *R. S.* 739, § 141.) And the heir of the vendor holds the legal estate merely as a trustee. The purchase money, as we have seen, goes into the personal estate, and is first applied to pay debts, &c. and the surplus is distributed to the widow and next of kin. Even in England, upon the conveyance of an estate derived by descent, the heir is only bound to covenant against his own acts and those of his immediate ancestor. (*Picket* v. *Loggon,* 14 *Ves.* 239. *Wakeman* v. *Duch. of Rutland,* 3 *Ves. Jr.* 233. *Loyd* v. *Griffiths,* 3 *Atk.* 267. 2 *Sug. V. and P.* 452.) No doubt, covenants may bind the land even in the hands of an infant heir. (*Spencer* v. *Boyes,* 4 *Ves.* 370.) But a personal covenant is a different matter.

Hill v. Ressegieu.

Nor is there any great hardship in this view of the case. It is not difficult, in this country, to ascertain all incumbrances that will affect a *bona fide* purchaser. And I think our system of settling the estate of deceased persons, inconsistent with the claim to covenants from the heir.

An infant trustee usually has his costs. (*Sutphen* v. *Fowler, supra.*) But not if the trustee, as in this case, puts in an improper defense. (2 *Barb. Ch. Pr.* 330.) And costs have been given to the plaintiff out of the purchase money, in a suit against an infant heir for specific performance. (*Pritharch* v. *Havard, 6 Sim.* 9. 3 *Dan. Ch. Pr.* 2, 118.) But in this case, as there was no default in the lifetime of the vendor, I think that rule should not apply. And neither the plaintiff nor the adult defendants should have costs against each other. One has asked too much, the other, in offering a quitclaim deed, did not offer enough. In such cases the court often gives costs to neither. (*Crippen* v. *Heermance,* 9 *Paige,* 211. *Righter* v. *Stall,* 3 *Sand. Ch.* 608. *Robertson* v. *Bullions,* 9 *Barb.* 136.)

Without any statutory provision it has been considered doubtful whether an infant could be compelled to execute a conveyance during his minority. It is said they must have a day to show cause. (*See Eyre* v. *Countess Buck.,* 2 *P. Wms.* 102. *Harris* v. *Youman,* 1 *Hoff. Ch.* 178. *Dart,* 535, 568. 1 *Barb. Ch. Pr.* 334. *Mills* v. *Dennis,* 3 *John. Ch.* 368. *In re Ellison, supra. Sutphen* v. *Fowler, sup. Glaze* v. *Drayton,* 1 *Dessau.* 109. *Price* v. *Carver,* 3 *My. & Cr.* 161.) But our statute expressly gives the power to compel a specific performance by the infant heir. "The court of chancery shall have power to compel and decree a specific performance by an infant heir or other person, of any bargain, contract, or agreement made by any party, who may die before performance thereof," &c. (2 *R. S.* 194, § 169. *And see* § 167 ; 1 *Sugd. V. and P.* 322 ; *Miller* v. *Knight,* 1 *Keen,* 129 ; *Radcliff* v. *Eccles, Id.* 130 ; *Brown* v. *Brown,* 3 *M. & K.* 443.) Some of the recent cases in England arose under the 10th and 11th sections of the act of 11 G. 4, and 1 H. 4, c. 47. The 10th section provides, that in any action, suit or proceeding against an infant "for the pay-

Hill *v.* Ressegien.

ment of debts or any other purposes," "the parol shall not demur," but the same shall be prosecuted, &c. as effectually as it could be before the act, in actions against infants where, according to law, the parol did not demur." Section 11 provides, in substance, that in proceedings in equity for the payment of the debts of deceased persons, to which the heir, &c. shall be liable, and in which the court shall decree the estates to be sold therefor, the court may compel the infant heir to convey to the purchaser, and the conveyance shall be as effectual as if the infant were of full age. (*See the sections more fully,* 1 *Dan. Ch. Pr.* 208; *note to* 3 *My. & Cr.* 159.) The court in *Carter* v. *Price,* (*supra,*) drew a distinction between parol demurring, and giving a day to show cause; and held that the day must still be given in a foreclosure case. But it seems that where the land is ordered to be sold for debts, the infant heir makes an immediate conveyance of the estate; and our statute gives authority in terms as full and express. I think the parol cannot demur in this state, in cases in which liability is attempted to be enforced in consequence of land descended or devised. (2 *R. S.* 454, § 43. *Id.* 106. *Id.* 452, 3. 1 *Id.* 739, § 141.) Nor do I see how the infant heir can have a day to show cause, when the statute requires that he shall convey, notwithstanding his minority.

The infant. defendant must therefore convey, but without covenants, and the other defendants must also convey, but with covenants against their own acts, on payment of the sum which is already due by the terms of the contract; deducting out of each payment now due and to become due a proportionate share of the amount that shall be found to be the value of the widow's right of dower, and on the plaintiff's giving a bond and mortgage on the premises for the balance of the purchase money, pursuant to the contract. If the plaintiff has been in possession, he should pay interest, and if not, that should be deducted for the time that he should have had title.

Ordered accordingly.

[WARREN GENERAL TERM, MAY 3, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]