Sedgwigk, Ch. J.
The first objection is that the general assignees, &c. of Bancker not being made parties to the foreclosure suit of Mott v. Bancker, their title has not been affected by the decree in that suit and is still outstanding.
We will first ask, what title did they acquire, by the assignment made to them by Bancker in trust fer his creditors ? The deed of assignment, on its face, conveyed only the interest in real estate that Bancker owned,- and the' assignees stood in Bancker’s place. This deed of assignment was dated February 28,1843, and was recorded May 17,1843.
Bancker’s title was affected by the following facts. March 5,1841, Iddings had obtained a judgment against Bancker, in the superior court. A transcript of the judgment was not docketed in the county clerk’s office, and it was not a lien upon real estate. The sheriff, however, had power under fieri facias, to sell Bancker’s interest in real estate. At this point, resort may be had to the statutes, for they clearly describe the rights and interests of the parties concerned in such a proceeding (2 Edm. Stat. 383 et seq.). On the sale the sheriff shall make out the certificates of sale. In this case the interest was sold on February 1, 1842, to one Wurtz, and the certificate of sale delivered to him, within ten days thereafter. The interest thus sold is described in, and its qualities may be inferred from, the following clauses, .through the different sections. By § 45, the land so sold may be redeemed by the payment to the purchaser of the sum bid by him and interest at the rate of ten per cent. By § 46, this redemption may be made by the execution-debtor, or his heir or devisee, or by any grantee of such debtor, e. g., the general assignees in this case. In § BO, the right acquired under the sale is called, “ the interest vested in the purchaser.” In § 51, it is called, the rights of the original purchaser. In § 53, it is said *367 that a junior judgment-creditor may acquire the title of the purchaser to the whole of such lot. In § 54, the interest of the purchaser is again said to be, the title of the purchaser to such undivided share or interest in the real estate. In § 55, the title of the original purchaser, is several times alluded to. In § 58, the right is called, “the title of the original purchaser to the premises sold.”
In § 61, it is enacted that the right and title of the person against whom the execution was issued, to any real estate, which shall be sold thereby, shall not be divested by such sale until the expiration of fifteen months from the time of such sale.
One Burtis, who became one of the general assignees of Bancker, redeemed from Wurtz, the original purchaser. In several cases it is said, that before the sheriff’s deed is, by the statute, to be delivered, the right acquired by the purchaser is not a title, but is a lien. In Jackson v. McCall or Ramsey (3 Cow. 79), it is said that the deeds relate back to the day of sale, by the sheriff (Smith v. Colvin, 17 Barb. 162). And the application of such a doctrine will reconcile the apparent contradiction of the statutes that have been cited, in declaring that the purchaser has title and yet that the title of the execution-debtor is not divested.
If the purchaser have a lien, it is manifest that it is not the lien of the judgment, but it is the lien of the sale. It is a lien of the character that is formed by the consequences of the sale, as enacted in the statute. The execution-deb tor, then, had the title, subject to being divested at the end of fifteen months, if there were no redemption. The purchaser had a lien, which at the end of fifteen months would ripen into a title, if there were no redemption ; and it was a lien, which upon ripening into a title, and when the debtor’s title was divested, became, by relation, a title from the time of sale. Third parties did not become interested, *368 between the sale and the sheriff’s deed, for, as has been already said, the general assignees stood in Bancker’s shoes and had no other right than he had. Their interest in the land was a right to redeem for a certain time, with what was otherwise a naked title subject to being divested at the end of fifteen months from the sheriff’s sale, and which was divested at the end of that time. The result is, that neither they, nor any one claiming under them, can have any interest in the premises which would entitle them to redeem from the Mott mortgage (Wright v. Douglas, 2 N.Y. 376; Miller v. Lewis 4 Id. 558; Bank of Vergennes v. Warren, 7 Hill, 93).
It has been argued, that under §9, act of 1840, chap. 342, inasmuch as judgment-creditors, and those claiming under them, were foreclosed without their having been made parties to the foreclosure-action, Burtis’ interests, as one redeeming from the original purchaser, were foreclosed, his claim being under Iddings’ judgment. I am of opinion, however, that his claim was not under the judgment, but under the sheriff’s statutory power of sale, which, when consummated, by relation put him in privity with Bancker, the judgment-debtor, from the time of sale (Mason v. Lord, 40 N. Y. 476).
Burtis, by petition, claiming to be the owner of the equity of redemption, made himself a party to the foreclosure proceedings, and took the surplus. This seemed to have been under section 10 of the act of 1840, c. 342. He, and all claiming under him, are estopped from questioning the title of Mr. Pease, the purchaser under the decree.
' The objection that has been now considered, is not valid.
The second main objection, rests upon the trusts of the will of William J. Pease. My opinion is that the executors of the will were the devisees of the land in *369 trust, with the power in trust to sell the real-estate devised, for the purpose of changing the investment under the directions of the will, in the second subdivision of the trust—that is, to invest the proceeds of the realty in bonds and mortgages which should be “first liens,” etc.
The executors, therefore, had power to sell to Will-cox, for the purpose indicated. They sold to Mm in this wise : Wilcox paid them $5,000 in cash, but the remaining part of the consideration-money, viz. $7,000, in a second mortgage, the first mortgage being one by Willcox to The Mutual Insurance Company and given for the $5,000 which Willcox paid cash on the sale. As the executors had no power, at least under the conditions in proof, to raise money by mortgage, or invest any part of the consideration in second mortgage, and as Willcox was not only cognizant, but assisting in the violation of the trust and in the act which was without power, it may be assumed that any one of the cestuis que trust might reclaim the property from Willcox, and subject it to the trust; that is, while the trust was still unfulfilled, might demand that the title and possession be again placed in the trustees, or their successors. Any pecuniary claim, against Willcox and the trustees, for the violation of the trust, would affirm the title of Willcox; and this litigation respects title alone.
The fact was, that Willcox, by conveying the property back to the executors or trustees, gave the practical remedy to the wrong that had been done in the improper conveyance by the executors. The possible claim of a cestui que trust, as to the title, had thus been answered, and satisfied. If it be suggested, that the cestui que trust might elect to ask damages, for the executors not requiring Willcox to pay the amount of Ms bond and mortgage of $7,000 to the executors,. *370 then, as has been suggested, the sale to Willcox would be ratified.
Disregarding for a moment the fact that, when the property was re-vested in the executors, there was the mortgage upon it to the Insurance Company, for $5,000, the condition of things was, that the property was in the same relation to the trust fund that it was before the sale to Willcox ; and as to it, the trustees had the power that has been described, under the trust, as to a change of investment. It would be, indeed, the duty of the trustees to sell, if expediency required it, and invest the proceeds in first mortgage. It cannot be said, that another sale would be beyond the power of the trustees, because the first sale was not an exercise of power, that power not having been given. The executors then had the power to sell to plaintiff Siegel, and the sale to him is only impeached on the assertion that it was for an inadequate consideration. Of this, however, there is no proof.
It may be said, that the premises were not returned to the executors in the same condition as when they were transferred by them to Willcox, inasmuch as, on their return, there was the mortgage of $5,000 still a lien upon them. I do not perceive that this objection is a reason for the defendants not taking title. If that mortgage were void, or voidable at the election of a cestui que trust, so far as that goes, the possibility of its being avoided would be a benefit to an owner of the property. So far as it is said to be a cloud upon title, the defendant cannot avoid it, because he has contracted with the plaintiff to pay it. So far as its , existence affected the price for which the property was sold to Siegel, the $5,000, which was the proceeds of this mortgage, represents any possible dimunition of value.
As to Mrs. Pease’s right of dower, her covenant in the executor’s deed is personal, and extends to any estate she personally had.
*371 On the whole, I am of opinion that Mr. Pease had such a title by adverse possession, that the assignees could not now redeem, if at any time they had had an equity of redemption.
There should be judgment for plaintiff as asked in 'the complaint, with costs. The case however is such that upon the defendant’s appealing, a stay of proceedings on the judgment will be granted.*

 No appeal was taken.