OLSEN, Respondent v. FIRST NATIONAL BANK,
Appellant

(83 N.W.2d 842)

(File No. 9609. Opinion filed June 24, 1957)

606

**Boyce, Warren, Murphy & McDowell,** Sioux Falls, for Defendant and Appellant.

**Louis H. Smith,** Sioux Falls, for Plaintiff and Respondent.

ROBERTS, J. Plaintiff brought this action against defendant bank as executor of the estate of Mabel E. Olsen, deceased, to recover the sum of $2,600.

John A. Olsen executed his last will and testament in due form on October 5, 1942. Paragraph V of the will reads as follows: "Subject to the life estate in favor of Mabel E. Olsen, I give, devise and bequeath unto Frank Olsen of Sioux Falls, South Dakota, the forty (40) acre farm owned by me and located in Turner County, South Dakota, and in the event of sale and conveyance of said premises by my life tenant and the proceeds of the sale of said premises cannot be readily identified, then this legacy to lapse, otherwise to remain in full force and effect."

On June 1, 1943, John A. Olsen and his wife by a warranty deed conveyed the forty acre tract to Ernest A. Larsen for a consideration of $2,600.

On November 6, 1944, John A. Olsen, his wife Mabel and his brother Frank met in Sioux Falls. Mrs. Olsen was present during all the time of a conversation between the brothers in an automobile parked near the Shriver-Johnson store. John A. Olsen at that time wrote out and handed to his brother a statement reading as follows:

> South of Shriver Johnson store
> Nov 6 1944—

"in an agreement, John A. Olsen and Mrs. John A. Olsen and Frank G. Olsen we have divided our

Estate in ½. My share goes to Bros Sisters neices-nehpews and you Frank recd $2600, for Turner County Farm which I sold for $65 pr. acre and this is your money Frank and no one can take this away from you this is my wish.

John A. Olsen."

At the same time there was made and delivered to the brother what purports to be a check as follows:

"Sioux Falls, So. Dak. Nov. 6 1945 No. ———
"First National Bank & Trust Company 78-2
"Pay To The Order of Frank G. Olsen $2600
Twenty Six Hundred Dollars

Pd in full. for 40 acres
sold for $65.00 pr acre John A. Olsen
and. to be cashed after my wifes death."

Plaintiff received a letter dated December 16, 1944, from his brother John, in which after expressing his appreciation for work done by plaintiff, he said: "therefore Frank that was the reason I gave you the check for the Turner County farm. that was the day you come up from Goldfield Nov. 6 1944 and I dated the check ahead either 1945 or 46. but just the same you are to have the money. it will be left in the bank for you and Mabel cant even take the money from bank and my bank is The First National Bank and Trust Co. and I also willed you Gov. Bonds and Gov. Stamps but Frank you are to leave every thing alone until I am dead also Mabel. after Mabel is Dead you can take this letter to Pankow the Adm. and show him and if you dont recd Bonds and Stamps you can get along with the $2600 check but my wish is for you to received every thing I willed you and I am sure Pankow will see that you receive this like you go down to Bank and ask him for a check book. You have done more for me than any one of my Bros. and Sisters."

Plaintiff received a typewritten letter dated March 7, 1945 and addressed to him at Goldfield, Iowa, from his brother. At the bottom of this letter in John's handwriting is the following: "Frank be sure to take care of check I gave you on Nov 6, 1944 and this is for Farm in Turner County pd in full no selling. this is my wish to you Frank. cash it after my wifes death. show this to Pankow your administrator."

John A. Olsen, died on March 25, 1945. The First National Bank & Trust Company, Sioux Falls, qualified as executor. The assets of the estate were appraised at $10,503.96. The final decree was entered February 4, 1946, assigning to the surviving wife all the property either absolutely or for life coupled with the power of sale. Mabel E. Olsen died on October 20, 1954. The assets of her estate were appraised at $75,188.52. Frank G. Olsen presented a claim for $2,600 to R. A. Pankow, trust officer of defendant bank named as executor. After hearing, the county court on July 25, 1955, made an order rejecting the claim.

The cause came on for trial and subsequently the court made findings in favor of plaintiff and decreed a constructive trust. The trial court filed an opinion from which we quote:

"From this record it seems apparent that Ex. 1, in the form of a check, is not effective as a check and was not intended by John A. Olsen to be presented and paid as a check is usually presented and paid. It was post-dated. No provision was made in the bank account to cover it. It was to be presented to Mr. Pankow, trust officer of the bank which was executor of both estates. The wife was to have use of the $2600 during her life and plaintiff was not to receive the amount until after the death of Mabel. * * *

"If the transaction were an attempt to make a testamentary disposition of the $2600 it was ineffective as such because the writings involved were not executed in compliance with the formalities required by statute.

"By the various writings John A. Olsen clearly expressed his purpose and intention that the plaintiff should have the amount of $2600 from his property after the death of his wife. The evidence in connection with the delivery of the check Ex. 1 and the written memorandum Ex. 2 shows that Mabel E. Olsen knew of and acquiesced in the arrangement. She knew that the $2600 was the consideration received upon conveyance of the 40 acres by her husband and herself and that the devise of the 40 acres to the plaintiff lapsed on account thereof. She knew that her husband intended plaintiff should have $2600 after her death in lieu of the 40 acres subject to her life interest. * * *

"There are no rights of creditors involved. The evidence is clear, satisfactory and convincing that John A. Olsen intended that his brother, the plaintiff, should have the $2600 after the death of himself and his wife. The wife knew of such purpose and the arrangement made and acquiesced therein. To prevent unjust enrichment of the wife's estate contrary to the intention of the husband a Court of Equity should establish and declare an implied, resulting or constructive trust for benefit of the plaintiff to the amount of $2600 in possession of the defendant executor."

Defendant appeals and urges (1) that the evidence does not sustain the findings of fact; (2) that the claim arising upon contract and payable from the assets of the estate of John A. Olsen is now barred by statute; (3) that necessary and indispensable parties were not before the court; and (4) that statements made by decedents to plaintiff were inadmissible.

■ Appellant asserts that the evidence does not supply the essential elements of a constructive trust and that the trial court erred in decreeing such trust in favor of the plaintiff. Cases have been cited by counsel for appellant in support of their contention that no money belonging to the plaintiff was traced and identified as a separate entity or as a part of an identifiable fund. While it is necessary that there be a res or specific fund on which the trust may be fixed, a constructive trust is not a title to or lien on property and in fact does not exist so as to affect property held until it is declared by a court of equity as a means of affording relief. International Refugee Organization v. Maryland Drydock Co., 4 Cir., 179 F.2d 284. It is not technically a trust. In re Zech's Estate, 69 S.D. 51, 6 N.W.2d 432; In re National Benefit Ass'n, 72 S.D. 23, 29 N.W.2d 81; Schwartzle v. Dale, 74 S.D. 467, 54 N.W.2d 361; In re Farmers State Bank of Amherst, 67 S.D. 51, 289 N.W. 75, 80, 126 A.L.R. 619. In the case last cited, the following comment from Restatement, Restitution, § 160, was quoted:

"The term 'constructive trust' is not altogether a felicitous one. It might be thought to suggest the idea that it is a fiduciary relation similar to an express trust, whereas it is in fact something quite

different from an express trust. An express trust and constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts. A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment. A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which give rise to a constructive trust may or may not involve a fiduciary relation."

 The general proposition is well settled that where a testator devises his property in reliance upon an agreement or understanding with a devisee or legatee that the latter hold it in trust, the devisee or legatee holds the property upon a constructive trust for the person for whom he agreed to hold it. Restatement, Trusts, § 55; see also Annotations in 66 A.L.R. 156 and 155 A.L.R. 106. The principle rests on the basis that though the acquiring of the property was not wrongful the testator having relied on the agreement and made a disposition of his property accordingly the devisee or legatee would be unjustly enriched if he were permitted to retain the property. It is immaterial whether the agreement was made at the time of or after execution of the will. An agreement which induces the testator to refrain from revoking his will is as effective as an agreement which induced him to make a will. See comments, Restatement, Trusts, § 55 and Restatement, Restitution, § 186. The trust in other words arises not from the will, but from operation of equities. The will takes effect as written and proved, but to prevent injustice the court imposes a constructive trust to compel the devisee or legatee to apply property obtained in accordance with his promise and good conscience. As was said by the court in Trustees of Amherst College v. Ritch, 151 N.Y. 282, 45 N.E. 876, 887, 37 L.R.A. 305:

"The trust springs from the intention of the testator and the promise of the legatee. * * * While a promise is essential, it need not be expressly made, for active co-operation or silent acquiescence may have the same effect as an express promise. If a legatee knows what the testator expects of him, and,

having an opportunity to speak, says nothing, it may be equivalent to a promise, provided the testator acts upon it. Whenever it appears that the testator was prevented from action by the action or silence of a legatee, who knew the facts in time to act or speak, he will not be permitted to apply the legacy to his own use when that would defeat the expectations of the testator. * * * The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has full effect, by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee ex maleficio [constructive trustee], to turn the gift to them. The law, not the will, fastens the trust upon the fund, by requiring the legatee to act in accordance with the instructions of the testator and his own promise."

■■ Appellant argues that the proof falls short of the standard that a constructive trust must be established by clear, satisfactory and convincing evidence. See Jones v. Jones, 67 S.D. 200, 291 N.W. 579. The several writings clearly show an understanding that plaintiff in lieu of the devise of the 40 acre tract was to be paid after the death of Mabel E. Olsen the amount received from the sale of such land. Whether by express promise or assent implied from silence, the understanding that induced John A. Olsen not to change his will or take other action to provide for the payment of the proceeds of the sale to his brother would have the same result as if he had been induced to make a will bequeathing the property to his wife upon her promise to hold same in trust for the brother. We are satisfied that the evidence adequately sustains the findings and the declaration of a constructive trust.

■■ Appellant contends that the agreement under which plaintiff seeks to recover is such that a claim based thereon must be filed within four months after first publication of notice to creditors as provided in SDC Supp. 35.1404. If a claim is not filed within the time limited, it is

within the terms of the statute "forever barred". The term "claims" in this statute has reference only to debts or demands which are collectible from an estate by virtue of having been claims against the decedent in his lefetime. Hirning v. Kurle, 54 S.D. 334, 223 N.W. 212. The present action in equity to establish a constructive trust is not based on an obligation owing from John A. Olsen in his lifetime. The claim statute does not apply.

 It is urged that since the present action is independent of the probate proceeding and relief is sought against property which on the death of Mabel E. Olsen devolved on her devisees and legatees they are necessary parties. Defendant executor is the official representative of her estate and since it holds the assets against which this action is brought to impose a constructive trust it is a necessary and indispensable party. SDC 35.1101-35.1102; Kelsey v. Welch, 8 S.D. 255, 66 N.W. 390. Even if we were to hold, which we do not, that the devisees and legatees are necessary parties the proper practice would have been to proceed under the provisions of SDC 33.0411 to have them brought in as parties. It is too late to raise the objection after entry of judgment.

 The final contention is that the testimony of the plaintiff as to statements made by his deceased brother and his wife Mabel was inadmissible. It is argued that the present action to establish a constructive trust is not an action, suit or proceeding within the meaning of the provisions of SDC 36.0104 so as to authorize admission of such statements. Appellant cites Larimore v. Dobbs, 74 S.D. 635, 57 N.W.2d 750, holding that this statute does not apply to admit statements of the deceased in an action against a legal representative wherein the estate is not actually involved. In some jurisdictions it has been held that a constructive trust may be established by parol evidence of the declarations of the testator or devisee. See Teuscher v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143. We need not, however, consider whether the declarations were otherwise admissible. Since assets in the possession of defendant as executor are involved, the present action is one within the terms of the statute.

614

The judgment appealed from is affirmed.

All the Judges concur.