**Donald SPECK and Joan Speck, Plaintiffs and Appellants,**

v.

**George ANDERSON, Defendant and Appellee.**

**No. 13054.**

Supreme Court of South Dakota.

Considered On Briefs Jan. 15, 1981.

Decided April 21, 1982.

Leonard E. Andera of Andera, Margadant & Erickson, Chamberlain, for plaintiffs and appellants.

John B. Wehde and Douglas G. Fosheim of Benson, Wehde & Severson, Huron, for defendant and appellee.

WOLLMAN Chief Justice (on reassignment).

■ This is an action for specific performance of an option agreement to purchase certain real estate. The trial court granted appellee's motion for summary judgment.[1] We reverse and remand.

Appellants, Donald and Joan Speck (Specks), operate a farming and ranching operation in Buffalo County, South Dakota. George Anderson (appellee) is the only son of Howard and Wilma Anderson. As a young man, appellee left home and moved to California.

As he grew older and his wife's health began to deteriorate, Howard Anderson became less interested in actively farming his 800 acres of grass and farm land. Accordingly, in 1972 he began renting this land to the Specks.

On December 8, 1976, Howard Anderson signed an agreement that gave the Specks until March 1, 1981, to exercise the right to purchase the 800 acres at $100 per acre.

Howard Anderson died testate on February 8, 1977. By the terms of his will, the land covered by the option was left to appellee. The final decree of distribution was entered on June 19, 1978. Wilma Anderson died on September 25, 1978. No claims were ever filed against either estate regarding the land covered by the option. It was not until October 31, 1978, that the option was filed for record in the office of the Buffalo County Register of Deeds.

On January 11, 1979, the Specks gave notice of acceptance of the option and made tender of the purchase price in full to appellee as successor in interest to Howard Anderson. Appellee refused to accept the tender and refused to deliver a deed to the Specks, whereupon the Specks commenced this action praying for specific performance of the option or, in the alternative, for $40,000 in compensation for services rendered in increasing the value of the land.

■ The first question raised by this appeal is whether the Specks were obligated to file a claim against the estate of Howard Anderson pursuant to SDCL 30–21–17 in order to preserve their right to enforce the option. SDCL 30–21–17 provides:

The time expressed in the notice to creditors for filing claims shall be two months after the first publication.

All claims arising upon contract whether the same be due, not due, or contingent, shall be filed within the time limited in the notice, and any claim not so filed is forever barred.

In *Olsen v. First National Bank*, 76 S.D. 605, 613, 83 N.W.2d 842, 847 (1957), this court held that the term "claims," as used in SDCL 30–21–17, refers only to "debts or demands which are collectible from an estate by virtue of having been claims against the decedent in his lifetime." See also *Hirning v. Kurle*, 54 S.D. 334, 223 N.W. 212 (1929). The purpose of the claims statute is to insure a timely arrangement for full or pro rata payment of claims during the course of administration. *Olson v. Altemus*, 77 S.D. 429, 93 N.W.2d 7 (1958); *Fish v. De Laray*, 8 S.D. 320, 66 N.W. 465 (1896).

In *Estate of Randall v. McKibben*, 191 N.W.2d 693 (Iowa 1971), the Supreme Court of Iowa held that a claim to recover specific property is not the type of claim that must be filed against a decedent's estate.

Likewise, in *Johnson v. Johnson*, 87 Colo. 207, 286 P. 109 (1930), in holding that the

---

1. Although the trial court granted what was denominated a summary judgment, the procedural history of this case is less than clear. No motion for summary judgment was ever served. There was extensive argument and some testimony at a pre-trial motion hearing.

Findings of fact and conclusions of law were entered, although they are unnecessary in a summary judgment proceeding. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968).

holder of an option to purchase corporate stock was not required to file a claim against the estate of the optionor, the Supreme Court of Colorado stated:

Defendant's counsel contend that, as the plaintiff's demand was not filed with the county court, it is barred by the statute of nonclaim, C.L. § 5331. So far as his rights against the defendant are concerned, it was not necessary for the plaintiff to assert his rights in the probate proceeding. He had an option—a right to purchase—that he did not exercise during the time the estate was being administered. He could have exercised his option while the estate was being administered, in which event he could have enforced the contract against the executor, assuming of course, that he exercised his option while it was still in force ... but he was not obliged to proceed in that way, and he chose not to do so.

286 P. at 111 (citation omitted).

In *Newberger v. Rifkind*, 28 Cal.App.3d 1070, 104 Cal.Rptr. 663 (1972), the plaintiffs sought to exercise stock options three years after the optionor's death. The court, interpreting a statutory provision similar to SDCL 30–21–17, noted that the word "claim" refers to debts or demands that might have been enforced against the decedent during the decedent's lifetime. The court then held that since the cause of action arose three years following the optionor's death, the plaintiffs were not required to file a claim with the probate court.

In rejecting the contention that the vendee of a contract to convey real estate was obligated to file a claim against the estate of the deceased vendor, the Supreme Court of Wyoming made an extensive review of the case law on the issue in reaching its conclusion that such filing was unnecessary:

Counsel for appellant seem to contend that it was necessary for the plaintiff to file a claim with the administratrix of the estate of [the vendor] in connection with the contract here in question. The contention is not well taken.... In *Mix v.*

*Yoakum*, 200 Cal. 681, 254 P. 557, 558, the court said: "There is a clear distinction between the cause of action of one who claims specific property held and claimed by the estate adversely to the claimant and a cause of action founded upon a claim against the estate. In the one case the claimant is in no sense a creditor of the estate, and in the other he occupies the position of a creditor." In the case of *In re Bailey's Estate*, 42 Cal.App.2d 509, 109 P.2d 356, 357, the court after quoting from *Mix v. Yoakum,* supra, stated: "One who claims as his own specific property held by an estate cannot be called a creditor of the estate. [*In re*] *Estate of Dutard*, 147 Cal. 253, 81 P. 519; *Newport v. Hatton*, 195 Cal. 132, 231 P. 987. In an action against the executor of an estate to recover specific real property as the owner thereof it is not necessary to file a claim. *Cohn v. Cohn*, 100 Cal.App. 746, 281 P. 504." To the same effect are *In re Bank's Estate*, 80 Mont. 159, 260 P. 128; *Johnson v. Johnson*, 87 Colo. 207, 286 P. 109. *Harris v. Craven*, 162 Or. 1, 91 P.2d 302, was an action for the purpose of securing specific performance of an alleged oral promise which the plaintiff claimed her husband had made. And it was held that it was unnecessary to file a claim with the estate in order to have the contract specifically performed. The contention of appellant in this connection accordingly must be overruled....

*Keystone Sheep Co. v. Grear*, 72 Wyo. 189, 263 P.2d 138, 144 (1953). In *Crockett v. Lowther*, 549 P.2d 303 (Wyo.1976), the Supreme Court of Wyoming reaffirmed the holding in *Keystone Sheep Company* by stating that the "case also stands for the concept, which we continue to approve, that it is not necessary for a purchaser under a contract to convey realty to file a claim with the personal representative of the decedent in order to assert his rights under the contract." 549 P.2d at 307.

We agree with the reasoning of the above-cited cases. Accordingly, we hold that the Specks were not required to file a claim against Howard Anderson's estate as

a condition precedent to exercising the option and maintaining the present suit for specific performance.[2]

Appellee contends that SDCL 43–28–17 and 43–25–3 bar the Specks from maintaining this action inasmuch as they failed to record the option. We do not agree.

SDCL 43–28–17 provides in part:

Every conveyance of real property other than a lease for a term not exceeding one year is void as against any subsequent purchaser or encumbrancer including an assignee of a mortgage, lease, or other conditional estate of the same property, or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded.

SDCL 43–25–3 provides:

Every grant of an estate in real property is conclusive against the grantor and everyone subsequently claiming under him, except a purchaser or encumbrancer who, in good faith, and for a valuable consideration, acquires a title or lien by an instrument that is first duly recorded.

Putting aside the questions whether appellee was a "purchaser" within the meaning of SDCL 43–28–17 and whether the distribution to him by the final decree was a "grant" within the meaning of SDCL 43–25–3, we are satisfied that appellee is bound by the terms of the option pursuant to SDCL 43–25–14, which provides:

The heirs and devisees of any person who has made any covenant or agreement in reference to the title of, in, or to any real property, are answerable upon such covenant or agreement to the extent of the land descended or devised to them, in the cases and in the manner prescribed by law.

In *Woods v. Ely*, 7 S.D. 471, 475, 64 N.W. 531, 532–33 (1895), this court interpreted the provisions of SDCL 43–25–14 (at that time S.D.Comp.Laws § 3254) as follows:

We understand it to be the purpose of these and similar provisions in other states not to create a new cause of action, but simply to declare a remedy which may be pursued upon a claim, upon the covenant or agreement of the ancestor. If the heir has succeeded to real property which, as assets of the estate, should be subject to claims against the ancestor on account of such broken covenant or agreement, then the heir so taking such real estate shall be liable to the extent of its value "in the cases and in the manner prescribed by law." See *Hill v. Ressegieu*, 17 Barb. 168 [162] [N.Y.App.Div. 1852], as to the effect of this provision.

The *Hill* case, cited in *Woods v. Ely*, supra, involved a suit for the specific performance of an agreement to convey real estate. The decedent had entered into an agreement for the purchase and sale of a farm to the plaintiff. A good and sufficient deed was to be conveyed on April 15, 1851, but the decedent died in October of 1850. On April 15, 1851, the plaintiff tendered the purchase price to the heirs, who refused to convey the property to the plaintiff. In holding that the heirs of the decedent were bound to convey the real estate to the plaintiff, the court stated:

A vendor who covenants to give a good and sufficient deed of conveyance, free of all incumbrances, is bound to make an operative conveyance; one that carries with it the title to land. . . .

And the heirs of a vendor are bound to fulfill his contract to convey, to the extent of the estate that descends to them. . . . But where a title to a part fails, or the vendor's interest is less than is provided for in the agreement, the vendee may generally claim a specific performance, to the extent of the ability of the vendor, with an abatement or compensation for the deficiency. . . .

*Hill v. Ressegieu*, supra, 17 Barb. at 164–65.

■■ It certainly would work no great hardship on appellee to convey the real

---

**2.** The plaintiff's claim in *Johnson v. Christensen*, 292 N.W.2d 101 (S.D.1980), was based upon a cause of action or claim that arose during the decedent's lifetime. Likewise, in both *Le Sueur v. Qillian*, 56 S.D. 289, 228 N.W. 380 (1929), and *Woods v. Ely*, 7 S.D. 471, 64 N.W. 531 (1895), the cause of action or claim had arisen during the decedent's lifetime.

estate to the Specks. It is a basic premise of property law that a devisee or heir can take no better title than that of the decedent. 3 Bancroft's Probate Practice § 531 (2d ed. 1950). Moreover, requiring appellee to convey the property would only follow the express wish of decedent, who added the following language to the standard option form:

In the event of my death I (Howard Anderson) seller do hereby direct my Heirs to fulfill this Option.

We conclude, therefore, that appellee is bound by the terms of the option.

A more troublesome question is whether the absence of Wilma Anderson's signature on the option bars the Specks' claim for relief.

■ South Dakota Constitution Article XXI § 4 provides:

The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal property, the kind and value of which to be fixed by general laws.

The homestead exemptions carrying out the foregoing provision of the constitution are found in SDCL ch. 43–31. The purpose of the homestead exemption is, of course, to provide the security of a home to a family against the claims of creditors. See, e.g., *Ramsey v. Lake County,* 70 S.D. 61, 14 N.W.2d 125 (1944); *Morgan v. Beuthein,* 10 S.D. 650, 75 N.W. 204 (1898); *Kingman v. O'Callaghan,* 4 S.D. 628, 57 N.W. 912 (1894). There is no question but that this court has over the years jealously and assiduously protected the homestead exemptions guaranteed by our constitution and statutes. As stated by Judge Rudolph for the court in *In re Schneider's Estate,* 72 S.D. 174, 179, 31 N.W.2d 261, 264 (1948):

Throughout the entire history of this court no inroads upon the homestead exemption have been recognized except such as were clearly in accord with the constitutional mandate, art. XXI, § 4,

Constitution of South Dakota, and found clear expression by the legislature....

See Comment, Creditors and the South Dakota Homestead Exemption, 17 S.D.L.Rev. 483 (1972).

■ Among the statutory enactments designed to protect the homestead exemption is the requirement that both the husband and wife must join in a conveyance or encumbrance of the homestead as a condition precedent to the validity of such conveyance or encumbrance. SDCL 43–31–17 provides:

A conveyance or encumbrance of the homestead by owner, if married and both husband and wife are residents of this state, shall be valid if both husband and wife concur in and sign or execute such conveyance or encumbrance either by joint instrument or by separate instruments; provided that, for the sole purpose of a wife of a serviceman making application for a home loan under Public Law 91–584, the signature of the wife alone shall be sufficient to convey or encumber such homestead if her husband is officially declared to be: missing in action, captured in line of duty by a hostile force, or forcibly detained or interned in line of duty by a foreign government or power.

Read literally, this court's decisions have declared that any attempted conveyance of the homestead that is not joined in by both husband and wife is absolutely void from the beginning inasmuch as the sole-signing vendor is entirely lacking in power and authority to transfer the property. See *O'Neill v. Bennett,* 49 S.D. 524, 207 N.W. 543 (1926). Upon further reflection, however, we are persuaded that given the circumstances of the case at bar an ab initio voiding of the otherwise arguably valid option would extend the protection of the homestead exemption to a class of persons needing no such protection. The requirement of SDCL 43–31–17 that a spouse must join in the conveyance of a homestead does not create in the non-owner spouse any estate in the land represented by the home-

stead. *Somers v. Somers*, 27 S.D. 500, 131 N.W. 1091 (1911); *State ex rel. Cain et al v. Toomey*, 27 S.D. 37, 129 N.W. 563 (1911). We conclude that what this court said in *In re Clouse's Estate*, 63 S.D. 147, 257 N.W. 106 (1934), is applicable to the case at bar:

The right of homestead is not, under the laws of this state, an estate in land, but is a mere privilege granted by the Legislature in fulfilling the constitutional mandate of section 4, art. 21, and consists of the right of occupancy given to the surviving spouse and minor children and does not pass by succession, showing clearly that when the need for protection for the family ceases, then there is no longer any reason for the homestead. The homestead exemption is therefore temporary and exists only so long as the conditions prevail under which it was allowed by the homestead law. In this case the homestead right died with the owner, Joseph A. Clouse, for the record discloses that he was survived by neither wife nor any minor children. *Bailly et al. v. Farmers' State Bank*, 35 S.D. 122, 150 N.W. 942.

63 S.D. at 150–51, 257 N.W. at 108.

In the instant case, the conditions that justified the application of the homestead exemption vanished upon the death of Wilma Anderson. We need not speculate on the results that might have been reached had the Specks attempted to exercise the option prior to Wilma Anderson's death. No doubt she could have presented the defense of the lack of her signature, leaving the Specks to whatever proof they might have been able to adduce on issues such as waiver, *Schutterle v. Schutterle*, 260 N.W.2d 341 (S.D.1977); estoppel, *Hanson v. Fiesler*, 49 S.D. 442, 207 N.W. 449 (1926); or assent, *Centerville Township v. Jenter*, 25 S.D. 314, 126 N.W. 575 (1910).

Moreover, the option itself was not a conveyance. Rather, as the Supreme Court of North Dakota held in *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325, 331 (1948): "[T]here was in no event a contract of purchase and sale of the property until the plaintiff had exercised the option to purchase. Obviously, there was in any event no 'conveyance or encumbrance' to the plaintiff until he had accepted the option and thus made the contract."

Although in a technical sense the option may have been an encumbrance in the sense of being a cloud on the title had it been recorded, it remained an inchoate right until exercised by the Specks. As we held in *Renner v. Crisman*, 80 S.D. 532, 536, 127 N.W.2d 717, 719 (1964), "Although an option to purchase real estate is initially unilateral in its nature, upon timely acceptance it becomes a mutually binding contract capable of enforcement and subject to the same rules as a bilateral contract." See also *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312 (S.D.1980); 77 Am.Jur.2d *Vendor and Purchaser* §§ 27 and 28 (1975). That being the case, we conclude that whatever impediment may have existed to the validity of the option in the first instance disappeared upon Wilma Anderson's death.

To guard the homestead right jealously in order to vindicate and effectuate the purposes of the constitutional and statutory expression of our citizens' concern for the security of the family is certainly a task that the judiciary should not shirk. When those purposes have been accomplished, however, to permit the assertion of the homestead exemption to be raised by those who have no rights under the homestead exemption statutes would be to arm with a sword those who need no such weapon. Accordingly, we hold that the absence of Wilma Anderson's signature from the option in question does not in and of itself render the option void in the circumstances of this case.

We note that the trial court also held that the option was given without any consideration. Given the truncated nature of the hearing that was conducted in this matter, we conclude that the trial court erred on this matter. See SDCL 53–6–3 and 53–6–4.

We, of course, express no intimation on whether the Specks are indeed entitled to the remedy of specific performance. See, e.g., *Stugelmayer v. Ulmer*, 260 N.W.2d 236 (S.D.1977); *Skjoldal v. Myren*, 86 S.D. 111,

191 N.W.2d 809 (1971); *Dolan v. Hudson*, 83 S.D. 144, 156 N.W.2d 78 (1968), aff'd on rehearing, 83 S.D. 331, 159 N.W.2d 128 (1968); *Renner v. Crisman,* supra. Whether it would be equitable in the present circumstances to grant specific performance or whether some lesser remedy would be appropriate, assuming that the Specks establish the validity of their claim, we leave to the sound discretion of the trial court.

The judgment is reversed, and the case is remanded to the circuit court for trial.

DUNN, MORGAN and HENDERSON, JJ., and McKEEVER, Circuit Judge, concur.

McKEEVER, Circuit Judge, sitting for FOSHEIM, J., disqualified.